David A. Hytowitz, OSB 751929
E-mail:  David.Hytowitz@LibertyMutual.com
Law Offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

Of Attorneys for  Defendant Stumptown Properties, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| GENE PFEIFER; RONALD PFEIFER, INNOVATIVE DESIGN & CONSTRUCTION, LLC, an Oregon limited liability company; and TRUSTEE, GENE PFEIFER on behalf of the JOHN A. PFEIFER TRUST UTRA 03-28-95, fdba Trust Solutions, | | No. 6:09-cv-6295-TC |
| Plaintiffs, | | |
| v. | | |
| CITY OF SILVERTON; SILVERTON FIRE DISTRICT; DARYL JONES; BRYAN COSGROVE; RICHARD D. RODEMAN; LINDA SARNOFF; KEN HECTOR; SHERRY HEOFEL; BILL CUMMINS; KYLE PALMER; STU RASMUSSEN; DENNIS STOLL; RANDAL THOMAS; VINCE HERMAN; JAMIE BAXTER; STUMPTOWN, LLC, an Oregon limited liability corporation; PAUL ANDERSON; and JOSEPH NICHOLETTI, | | DEFENDANT STUMPTOWN's MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT  *ORAL ARGUMENT REQUESTED* |
| Defendants. | | |

DEFENDANT STUMPTOWN'S
MEMORANDUM  IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ................................................................................. 2

III.    SUMMARY JUDGMENT STANDARDS .................................................................. 10

IV.     LEGAL ARGUMENT ........................................................................................ 11

   A. Plaintiffs' Claims Against the Defendant Stumptown  Fails Because the Alleged Unlawful Conduct Falls Within the Proper Exercise of Police Power. ................................................. 12

      1.      The Relevant Property Maintenance Regulations ("PMRs"). .................................. 13

      2.      The Defendants Properly applied and enforced the PMRs. ..................................... 16

   B. Defendants are Entitled to Summary Judgment on Plaintiffs' Section 1983 Claim. ........... 18

      1.      Plaintiffs cannot prove a substantive due process violation. ................................... 19

      2.      Plaintiffs cannot prove a procedural due process violation. .................................... 21

      3.      In any event, the individual Defendants is entitled to Qualified Immunity. ............. 22

      4.      Plaintiffs cannot prove municipal liability. And Stumptown is not a municipal agency or entity ................................................................................................. 24

   C. Defendant is Entitled to Summary Judgment on Plaintiffs' State Law Claims. ................. 27

      1.      There is no genuine issue of material fact regarding plaintiffs' negligence claim. .. 27

      2.      There is no genuine issue of material fact regarding plaintiffs' trespass claim. ....... 32

      3.      There is no genuine issue of material fact regarding plaintiffs' abuse of process claim ................................................................................................................... 34

      4.      There is no genuine issue of material fact regarding plaintiffs' wrongful civil proceedings claim. ................................................................................................ 35

      5.      There is no genuine issue of material fact regarding plaintiffs' conversion claim... 37

      6.      There is no genuine issue of material fact regarding plaintiffs' infliction of emotional distress claim. ....................................................................................... 38

      7.      There is no genuine issue of material fact regarding plaintiffs' elder abuse claim. . 41

      8.      There is no genuine issue of material fact regarding plaintiffs' interference with business relations. ............................................................................................... 42

V.      CONCLUSION ................................................................................................ 44

Page i -    STUMPTOWN  DEFENDANTS'
           MEMORANDUM IN SUPPORT OF
           MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

## TABLE OF AUTHORITIES

### Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598 (1970) ............................ 27

*Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807 (1994) ........................................ 19

*Allen v. Hall*, 328 Or. 276, 281, 974 P.2d 199 (1999) ................................................ 42

*Alvarez v. Retail Credit Ass'n*, 234 Or. 255, 259-60, 381 P.2d 499 (1963) ...................... 35

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986) ..................... 11

*Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ......................................... 25

*Armendariz v. Penman*, 31 F.3d 860, 867 (9th Cir.1994),
    *aff'd in part*, 75 F.3d 1311 (1996) ........................................................... 20

*Baer v. City of Bend*, 206 Or. 221, 224-25, 292 P.2d 134 (1956) ................................. 12

*Bd. Of County Comm'rs of Bryan County v. Brown*,
    520 U.S. 397, 403, 117 S.Ct. 1382 (1997) .................................................. 24

*Bell v. Barnard Motors Inc.*, 537 P.2d 86 (Or. 1975) .............................................. 30

*Bellikka v. Green*, 762 P.2d 997 (Or. 1988) ........................................................ 30

*Bergeron v. Aero Sales, Inc.*, 205 Or. App. 257, 261, 134 P.3d 964 (2006) ...................... 37

*Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777 (1982) ................................... 27

*Brennan v. City of Eugene*, 285 Or. 401, 405, 591 P.2d 719 (1979) .............................. 27

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924
    (2001) ........................................................................................ 26

*Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894 (1978) ..................................... 23

*Carvalho v. Wolfe*, 207 Or.App. 175, 182, 140 P.3d 1161 (2006) ................................. 32

*Catale v. Vanport Mfg., Inc.*, 738 P.2d 599 (Or. Ct. App. 1987) ................................. 30

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S. Ct. 2548 (1986) ..................... 10, 11

*Church v. Woods*, 190 Or. App. 112, 117, 77 P.3d 1150 (2003) ................................ 41, 42

*City of Canton v. Harris*, 489 U.S. 378, 388-90, 109 S.Ct. 1197 (1989) ........................ 25

*City of Erie v. Pap's A.M.*, 529 U.S. 277, 296, 120 S.Ct. 1382 (2000) .......................... 13

*Clausen v. Carstens*, 83 Or.App. 112, 118, 730 P.2d 604 (1986) ................................. 34

*Clemente v. State*, 227 Or. App. 434, 442, 206 P.3d 249 (2009) ................................. 40

*Colmus v. Sergeeva*, 175 Or.App. 131, 135, 27 P.3d 166 (2001) ................................. 32

*Columbia County v. Sande*, 175 Or. App. 400, 408, 28 P.3d 657 (2001) ......................... 34

*Conklin v. Karban Rock, Inc.*,
    94 Or.App. 593, 601, 767 P.2d 444, *rev den*, 307 Or.719, 773 P.2d774 (1989) ............. 42

*Conner v. City of Santa Anna*, 897 F.2d 1487, 1492 (9th Cir. 1990) ............................ 21

*Cook v. Sch. Dist. UH3J*, 83 Or.App. 292, 294, 731 P.2d 443 (1987) ............................ 27

*Crown Point Dev. Inc. v. City of Sun Valley*, 506 F.3d 851, 856-57 (9th Cir. 2007) ............. 20

*Curtis v. MRI Imaging Services II*, 148 Or. App. 607, 612,
    941 P.2d 602 (1997), *aff'd on other grounds* 327 Or. 9, 956 P.2d 960 (1998) ............. 38

*Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662 (1986) .............................. 19, 21

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ................................... 11, 35

*Donaca v. Curry County*, 303 Or. 30, 734 P.2d 1339, 1344 (1987) ................................ 29

*Douglas Med. Ctr., LLC v. Mercy Med. Ctr.*, 203 Or.App. 619, 634, 125 P.3d 1281 (2006) ...... 43

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) .................... 10, 11

Fed.R.Civ.P. 56(e) ................................................................................. 28

*Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998) ....................... 21

Page ii -   STUMPTOWN DEFENDANTS'
          MEMORANDUM IN SUPPORT OF
          MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

*Fuhrer v. Gearhart By the Sea, Inc.*, 760 P.2d 874, 878 (Or. 1988) .............................................. 29

*Hager v. Tire Recyclers, Inc.*, 136 Or.App. 439, 443, 901 P.2d 948 (1995) .............................. 32

*Hall v. The May Dept.* Stores, 292 Or. 131, 135, 637 P.2d 126 (1981).................................... 40, 41

*Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir.1994) ............................................... 20

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982) ...................................................... 23

*Hawkins v. Barber*, 263 Or. 416, 418, 502 P.2d 591 (1972) ....................................................... 32

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
452 U.S. 264, 299-300, 101 S.Ct. 2389 (1981) ................................................................... 21

*House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008) ................................................... 40

*Huffman and Wright Logging Co. v. Wade*, 317 Or. 445, 469 n. 8, 857 P.2d 101 (1993) .......... 32

*Humbert v. Knutson*, 224 Or. 133, 140, 354 P.2d 826 (1960) .................................................... 36

*Ironwood Homes, Inc. v. Bowen*, 719 F.Supp.2d 1277, 1282 (D. Or. 2010)............................... 12

*Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449 (1974) ................................... 26

*Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001) ............................................................... 23

*Jensen v. Meyers*, 441 P.2d 604 (Or. 1968) ............................................................................ 30

*Larsen v. Credit Bureau*, 279 Or. 405, 408, 568 P.2d 657 (1977) (citation omitted).................. 34

*Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir.1988) .............................................................. 19

*Lockett v. Hill*, 182 Or.App. 377, 380, 51 P.3d 5 (2002)........................................................... 38

*Loosli v. City of Salem*, 215 Or.App. 502, 511, 170 P.3d 1084 (2007) ....................................... 38

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744 (1982) ................................... 26

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986) .................................................... 23

*Mantia v. Hanson*, 190 Or. App. 412, 418-19, 79 P.3d 404 (2003) ............................................ 35

*Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893 (1976)................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 587, 106 S.Ct. 1348 (1986)............................................................................ 11

*McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ............................................................. 25

*McGanty v. Staudenraus*, 321 Or. 532, 542, 901 P.2d 841 (1995)................................... 39, 40, 42

*McWilliam v. Phillips Petroleum, Inc.*, 525 P.2d 1011 (Or. 1974)............................................... 30

*Mitchell v. Forsythe*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985) ............................................... 22

*Monell v. Dept. of Social Serv. of N.Y.*,
436 U.S. 658, 691, 98 S.Ct. 2018 (1978)............................................................................. 24

*Morrow v. First Interstate Bank of Oregon, N.A.*,
118 Or. App. 164, 167, 847 P.2d 411 (1993)........................................................................ 38

*Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) ............................................................... 23

*Mustola v. Toddy,* 253 Or. 658, 456 P.2d 1004 (1969).............................................................. 37

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1107 (9th Cir. 2000) .................... 11

*North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008)................................. 20

*Northwest Natural Gas Co. v. Chase Gardens, Inc.*
328 Or. 487, 498, 982 P.2d 1117 (1999) ...................................................................... 42, 43

*Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) ............................................. 19

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) .............................................................. 25

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981) ............................................. 19, 21

*Patel v. Penman*, 103 F.3d 868, 874 (9th Cir.1996) ................................................................. 19

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80,
106 S.Ct. 1292 (1986)......................................................................................................... 25

*Rathgeber v. James Hemenway, Inc.*, 335 Or. 404, 418, 69 P.3d 710 (2003) ............................ 39

STUMPTOWN DEFENDANTS'
MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

*Reduction Company v. Sanitary Works*, 199 U.S. 306, 318-19, 26 S.Ct. 100 (1905) ................ 12

*Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. 2764 ........................................................ 26

*Rex v. Albertson's, Inc.*, 102 Or.App. 178, 792 P.2d 1248, 1249 (1990) ........................... 30

*Reynolds v. Schrock*, 197 Or.App. 564, 578, 107 P.3d 52,
    *rev. allowed*, 339 Or. 475, 124 P.3d 1248 (2005) ............................................ 37

*Robertson v. City of Turner*, 187 Or. App. 702, 707, 69 P.3d 738, *rev. den* ................ 12

*Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) ............................. 23

*Rockhill v. Pollard*, 259 Or. 54, 59-64, 485 P.2d 28 (1971) ................................. 39

*Rose (Betty) v. Whitbeck*, 277 Or. 791, 795,
    562 P.2d 188, *modified on other grounds*, 278 Or 463, 564 P2d 671 (1977) ......... 36

*Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001) .............................. 23

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683 (1974) ................................. 22

*Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir.2008) ................................ 20

*Shin v. Sunriver Preparatory School, Inc.*, 199 Or.App. 352, 365, 111 P.3d 762 (2005) ........... 38

*Skeen v. Department of Human Resources*, 171 Or. App. 557, 17 P.3d 526 (2000) .......... 39

SMC 15.08.684 ...................................................................... 22

*Snead v. Metropolitan Property and Casualty Ins. Co.*,
    909 F. Supp. 775, 779 (D. Or. 1996) *affirmed* 116 F.3d 486 (9th Cir. 1997) .......... 39

*Solberg v. Johnson*, 306 Or. 484, 760 P.2d 867, 870 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J*, 734 P.2d 1326) .......................................................... 31

*Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1317 (9th Cir. 1989) .................. 21

*Stevens v. First Interstate Bank of California*,
    167 Or.App. 280, 286-87, 999 P.2d 551 (2000) .................................... 38, 39

*Straube v. Larson*, 287 Or. 357, 360-61, 600 P.2d 371 (1979) ........................... 42

*Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*,
    535 U.S. 302, 334, 122 S.Ct. 1465 (2002) (internal citation omitted ................. 12

*Taylor v. Ramsay-Gerding Const. Co.*, 345 Or. 403, 410, 196 P.2d 532 (2008) ......... 18, 21, 32

*Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) .................... 21

*Top Service Body Shop v. Allstate Ins. Co.*,
    283 Or.App. 201, 209, 582 P.2d 1365, 1371 (Or. 1978) ............................. 43

*United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, (1941) ..................... 26

*United States v. Davis*, 332 F.3d 1163, 1169 (9th Cir.2003) ............................ 32

*United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir.2005) ............................... 32

*United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095 (1987) ................... 19

*Wampler v. Palmerton*, 250 Or. 65, 73-76, 439 P.2d 601 (1968) ...................... 42, 43

*West*, 487 U.S. at 49, 108 S.Ct. 2250 ................................................ 26

*Yanzick v. Tawney*, 44 Or.App. 59, 64, 605 P.2d 297, *rev. den.* 288 Or. 677 (1980) ......... 27

**Statutes**

336 Or. 92 (2003) ................................................................... 12

42 U.S.C. § 1983 ............................................................... passim

42 USC §1367 ....................................................................... 12

42 USC §1983 ....................................................................... 30

Fed.R.Civ.P. 56(c) .................................................................. 10

O.R.S. 124.100 .................................................................. 46, 47

O.R.S. 124.100(2) ................................................................... 46

O.R.S. 466.075 ..................................................................... 14

STUMPTOWN DEFENDANTS'
MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

**Law offices of Andersen & Nyburg**
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

O.R.S. 466.095 ................................................................................................ 14
O.R.S. 466.180(1) .......................................................................................... 14
Or.Rev.Stat. 466.010 ..................................................................................... 13

**Treatises**

*Restatement (Second) of Torts § 658 (1977)* ............................................ 28
*Restatement (Second) Torts § 222A(2) (1965)* ......................................... 29
*Restatement at § 587* ................................................................................... 28

**Regulations**

SMC 12.08.400 ............................................................................................. 12
SMC 15.08.020 ............................................................................................. 11
SMC 15.08.320 ....................................................................................... 13, 14
SMC 15.08.360 ............................................................................................. 12
SMC 15.08.380 ....................................................................................... 13, 15
SMC 15.08.385 ...................................................................................... passim
SMC 15.08.390 ................................................................................. 12, 13, 14
SMC 15.08.400 ............................................................................................. 12
SMC 15.08.470 ............................................................................................. 13
SMC 15.08.480-15.08.900 ........................................................................... 14
SMC 15.08.500 ............................................................................................. 13
SMC 15.08.580 ....................................................................................... 13, 27
SMC 15.08.610 ............................................................................................. 16
SMC 15.08.620 ....................................................................................... 13, 16
SMC 15.08.660 ............................................................................................. 14
SMC 15.08.681 ............................................................................... 13, 15, 27
SMC 15.08.700 ............................................................................................. 19
SMC 15.08.710 ............................................................................................. 19
SMC 15.098.390 ........................................................................................... 16

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

## I.  INTRODUCTION

This case arises from the discovery and removal of hazardous waste and chemicals from property occupied by Plaintiffs.  Brothers Gene Pfeifer and Ronald Pfeifer and their business and trust entities bring nine claims for relief against the City of Silverton ("City"), its individual employees, listed in the Third Amended Complaint (collectively referred to as the "City Defendants")[1], Silverton Fire Department and some of its listed employees, Defendant Stumptown Properties, LLC ("Stumptown") and individual Defendant Anderson,  after hazardous waste was discovered during a routine fire and building code inspection, prompting immediate response from City and State agencies.  The hazardous waste was quickly removed from the site, and Plaintiffs were ultimately fined by Oregon's Department of Environmental Quality ("DEQ").

Plaintiffs bring nine claims against the Defendants:  (1) common law negligence; (2) common law trespass; (3) abuse of process; (4) wrongful civil proceedings; (5) conversion; (6) infliction of emotional distress; (7) elder abuse; (8) interference with business relations; and (9) due process violation under 42 U.S.C. §1983.

Plaintiffs' claims fail on several fronts.  First, at all times material to Plaintiffs' claims for relief, the City and Fire Defendants were properly exercising their police power to safeguard the health and safety of Silverton's citizens pursuant to the Silverton's Municipal Code and are thereby immunized from liability. Stumptown was not a government agency nor did it take any action other than being subject to following the direction and orders of the government authorities.   Second, even if this court were to find that Plaintiffs' claims are not precluded by the City of Silverton's and Fire Department Defendants' exercise of police power, Plaintiffs federal law claim fails as a matter of law because the undisputed evidence is that the Silverton City and Fire Defendants and Stumptown, a nongovernment agency, did not deprive Plaintiffs of any constitutionally protected

---

[1] The City and the City Defendants are jointly referred to as the "Silverton Defendants," or  "City Defendants." The Silverton Fire Department and Fire Department Defendants are referred to as the "Fire Department Defendants" or "City Fire Defendants."

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

interest without due process, and, in any event, the individual City Defendants are entitled to qualified immunity and there is no evidence to support a

municipal liability claim against the City, Fire Department or Stumptown, a private entity. Third, all of Plaintiffs' state law claims fail on their merits as a matter of law for insufficient evidence to support a prima facie case. Stumptown Properties, LLC (shown as Stumptown LLC on the pleadings) is not a government agency. All actions which Plaintiffs allege occurred here were actions taken by City, Fire Department, the Oregon DEQ and State Fire Marshall for conditions on the property caused or created by Plaintiffs or their predecessors. Defendant Stumptown took no State Action itself.

  **Defendant Stumptown joins in and adopts the motions, argument, declarations and exhibits attached to Defendant City of Silverton's Motion for Summary Judgment and Memorandum in Support. Citations unless otherwise noted are to the Declaration of Richard Kuhn and exhibits attached thereto filed in Support of City of Silverton Defendants' Motion for Summary Judgment.**

  For these reasons, Defendant Stumptown respectfully requests the court grant summary judgment in its favor and dismiss all of Plaintiffs' claims for relief.

## II.  FACTUAL BACKGROUND

  This case involves a three-acre commercial property, encompassing the addresses of 600 and 622 North Water Street, and 110 and 118 Brown Street in Silverton, Oregon. Third Am. Comp. ¶ 23; Kuhn Decl., Ex. A, Depo Ex. 101, Map; Ex. B, Ronald Pfeifer ("RP") Depo, 46:13 – 47:13. According to Plaintiffs' current complaint, the real property at issue was acquired by John A. Pfeifer (father of Plaintiffs Gene and Ronald Pfeifer) in 1953, and has been occupied and used by members of the Pfeifer family to some extent ever since that time. Third Am. Comp. ¶¶ 23-24.  I

  In 2000, Defendant Stumptown, LLC ("Stumptown") took ownership of the property (hereinafter referred to as the "Stumptown Property") after a foreclosure. *Id.* ¶ 26. From that point forward, Plaintiffs remained on the property through a lease of 622 N. Water Street. Kuhn Decl, Ex. C, Depo Ex. 127, Lease Agreement. Gene Pfeifer's business, Innovative Design and

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

Construction, LLC ("IDC") and Ronald Pfeifer's chemistry laboratory were housed in the two-story building at 622 N. Water Street ("IDC Building"). Kuhn Decl, Ex. D - Gene Pfeifer ("GP") Depo, 156:5-8; 240:12-13. Despite the written terms of Plaintiffs' lease agreement, Plaintiffs used the areas at 110 and 118 Brown Street, including structures referred to as the "Turkey Shed" and "Tile Building" for storage. *Id.* at 448:21 – 449:4.

In 2000, Plaintiffs' received a copy of a report by an environmental consultant recommending alternative storage and removal of chemicals on the Stumptown Property. Kuhn Decl, Ex. D, GP Depo, 235:1 - 236:14. Despite the fact that the chemicals belonged to Plaintiffs and had been on the property for decades, they did nothing between 2000 and 2007 to properly store or remove the chemicals. *Id.* at 236:14 – 237:8; 238: 2-13; 240:24-25. In fact, Plaintiffs admit that the chemistry had been untouched and remained in exactly the same locations as they were when government officials discovered them on September 5, 2007. *Id.* at 239:5. Further, Plaintiffs admit that on September 5th, the Stumptown Property contained radioactive material, a barrel of cyanide, a tank of ethylene oxide, approximately 100 old tires, and paint waste, including paint cans from the 1950s and a 55-gallon drum of paint thinner. *Id.* at 152:22- 153:7; 177:22 – 178:7; 182:16-18; 340:11 – 41:1; 345:9-13. Hytowitz Decl., Ex A, RP Depo 77:2-19.

In July 2007, Plaintiffs stopped paying rent to Stumptown on the property for approximately 6 to 18 months. Kuhn Decl, Ex D, GP Depo 94:1 - 95:2, 103:18 - 105:12.

Sometime prior to September 5, 2007, Stumptown leased the 600 Building to a new tenant. *Id.* at, 99:8-22. The 600 Building had been home to John Pfeifer's Square Deal Lumber Yard, a family business located on the property since the early 1950s. *Id.* at 26:1-6; 107:6-8; 107:15-24. The Square Deal Lumber Yard closed sometime in 2001-02, and while the 600 Building remained unoccupied, remnants from the Pfeifer lumber business continued to be stored there. *Id.* at 108:10-16; 451:16-20. Square Deal was an entity owned by the Plaintiff Pfeifer Trust, with Gene Pfeifer as its President when it closed. Square Deal assets to the extent not taken in the foreclosure were owned by the Trust. Hytowitz Decl, Ex. B., GP Depo 452:5-454:6;

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

404:3-406:22. In preparation for the new tenant, Stumptown asked Gene Pfeifer to clean out the 600 Building. Kuhn Decl, Ex. D. GP Depo 106:20 – 107:9. The materials in the building consisted of junk and debris, including paint waste. *Id*. at 108:2-16; 112:5-23. A pile of asbestos sat outside the 600 Building. *Id*. at 185:21-22.

Gene Pfeifer assigned several of his IDC employees to work on cleaning out the 600 Building. *Id*. at, 185:13-18. These clean-out efforts took four to eight weeks. *Id*. Gene Pfeifer placed Dixie Gutherie, IDC's shop foreman, in charge of the cleaning crew. *Id*. at 191:7-12. He considered Ms. Gutherie part of the IDC management team. *Id*. at 195:19-21. IDC's clean-up crew moved most of the materials from the old lumber yard building into the Turkey Shed. *Id*. at 111:25-112:2.

On September 5, 2007, Silverton Fire Chief Vince Herman, Building Code Inspector Daryl Jones and State Fire Marshal Paul Ness came to the Stumptown Property to perform a routine fire and building code inspection arising out of a business license application submitted by the new tenant of the 600 Building. Initially no representatives of Stumptown were present. Kuhn Decl, Ex. E – application for license; Kuhn Decl, GP Depo, Ex. D, 99:23 - 100:1; Hytowitz Decl., Ex. B, GP Depo. 100:21-101:19. Ms. Guthrie and the crew were continuing their efforts to remove debris from the 600 Building during the officials' inspection. Kuhn Decl, Ex. D, GP Depo, 196:20-23. Noticing the IDC crew's efforts, the agency officials spoke with Ms. Guthrie and she offered to show them more of the property. *Id*. at 219:7-18. Ms. Guthrie went into the IDC Building and came out with a key to unlock the Tile Building for the officials. *Id*. at 218:14-18. Plaintiffs understood that Ms. Guthrie and Joseph Nicoletti, an IDC project manager, gave the inspectors access to the locked building. *Id*. at 211:15-23; 212:9-18; 209:16-20.

When Gene Pfeifer encountered the officials for the first time on September 5, 2007, he did not ask any of them to leave nor did he say anything to suggest that they did not have his consent to be on the property. *Id*. at 223:1-6. Instead, Gene Pfeifer admits that he cooperated with the

Page 4 -     DEFENDANT STUMPTOWN'S
MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

investigation. *Id.* at 223:7-12. In fact, Gene Pfeifer testified that had Ms. Guthrie asked him

directly if she could unlock the Tile Building for the inspectors, "I probably would have let them

in." *Id.* at 250:9-16.

Gene Pfeifer recalls that he first encountered the inspectors on the property shortly after

noon on September 5, 2007. *Id.* at 196:3-5. Prior to that time, he had been working in the

conference room at the IDC Building. *Id.* at 196:9-14. His first meeting was with Fire Chief

Herman, Building Inspector Jones, a few PGE employees, and by then a representative from

Stumptown. *Id.* at 198:12-199:21. PGE was on the property cutting a power line that supplied

electricity to the Tile Building and Turkey Shed. *Id.* at 199:22 - 200:16. This was the only power

line cut and power at the IDC Building remained unaffected. *Id.* at 200:17-24. Dr. Dalisky, a

Stumptown representative, authorized PGE to cut the power to the Tile Building and Turkey Shed.

*Id.* at 199:12-16; 202:5-11.

Gene Pfeifer recalls that after he came upon the group of officials watching PGE's work, he

understood that the group was concerned about the abandoned chemistry on the Stumptown

Property. *Id.* at 201:24 - 202:4. Gene Pfeifer approached Dr. Dalisky and said something to the

effect of "we need to work together on this and get a solution right away." *Id.* at 201:11-18. Gene

Pfeifer was not aware at that time specifically what the problem was for the power to be ordered cut

off. Gene Pfeifer then talked with State Fire Marshall Nees and Building Inspector Jones and

learned that the officials had safety concerns and wanted to secure the Tile Building while they

continued their investigation. *Id.* at 202:22 - 203:15.

After their initial discussions, which took place outside of the Tile Building, Gene Pfeifer

took the inspectors inside the Tile Building. *Id.* at 203:15-24. While inside the Tile Building, the

officials pointed out their concerns to Mr. Pfeifer. *Id.* at 204:2-3. State Fire Marshall Nees

explained that the power had been disconnected because *he* was concerned about fire and noted that

some of the building's electrical outlets violated code. *Id.* at 204:15-18. He insisted that the

building be boarded up. *Id.* at 204:9-13.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

State Fire Marshall Nees had earlier requested DEQ's involvement and Susan Shewczyk of DEQ arrived sometime during these discussions. *Id.* at 204:3-5; 382:15-16. A plan was made with Gene Pfeifer to secure the Tile Building and meet with the government officials at the Property the following morning. *Id.* at 205:13-15. The DEQ official felt there were abandoned chemistries and paints on the facilities and accused Pfeifer of it. Hytowitz Decl., Ex B , GP Depo 207:3-8. There was no inspection of Ron Pfeifer's lab on September 5, 2007. Kuhn Decl, Ex D, GP Depo 207:9-13. Gene Pfeifer did not believe the officials knew that a lab existed on the property. *Id.* at 207:12-17.

After spending a few hours with the officials, Gene Pfeifer went back to his office to continue with his work and to call his brother to let him know that officials had inspected the Turkey Shed and Tile Building and were concerned about chemistry located on the property. Kuhn Decl, Ex. D, GP Depo, 205:16 - 206:5; 226:1-6. Later that night, Ron Pfeifer came to the Stumptown Property and removed materials from his lab without informing any government officials. *Id.* at 224:17 - 225:10. Gene Pfeifer told his brother about the meeting scheduled the next morning so that Ron Pfeifer could participate. *Id.* at 226:9-14.

Gene Pfeifer met with State Fire Marshall Nees and Building Inspector Jones at the Stumptown property at 9:00 a.m. on September 6, 2007. No one from Stumptown was present or involved . Kuhn Decl, Ex. D, GP Depo, 230:18-22; 231:1-6. During that meeting, Fire Marshall Nees presented Gene Pfeifer with a list of concerns and clean-up tasks. These concerns included questionable electrical connections and concerns for fire. Pfeifer indicated they had the open conditions since the building was procured by his dad. The State Fire Marshall was concerned about fire and the chemicals present. Hytowitz Decl, Ex B, GP Depo 230: 2-17; 232:10-21. According to Gene Pfeifer, Building Inspector Jones also explained his concerns about hazardous waste on the property and insisted that the clean-up of the chemistry begin immediately. Kuhn Decl, Ex D, GP Depo 232:10-15; 232:22-25. Gene Pfeifer recalls that Building Inspector Jones told him that if they did not take care of the cleanup efforts, the City would hire the work out and charge Plaintiffs for it. *Id.* at 233:15-20. The meeting ended with the understanding that Gene Pfeifer would look into

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

hiring an environmental contractor to undertake the cleanup efforts and would contact the landowner, Stumptown. *Id.* at 233:23 - 234:3.

State Fire Marshall Nees arranged for a second meeting on September 6th that initially included Gene Pfeifer and Susan Shewczyk from DEQ, but was later joined by Ron Pfeifer, Building Inspector Jones, City Manager Bryan Cosgrove and another City official. *Id.* at 245:19 – 246:5. According to Gene Pfeifer, the point of this meeting was to discuss Plaintiffs' efforts in securing an environmental contractor and to discuss whether any of Ron Pfeiffer's lab materials could be saved. *Id.* at 248:5-10.

A third meeting occurred on September 6th for the purpose of inspecting Ron Pfeifer's lab. *Id.* at, 354:18-23; 355:6-11. Susan Shewczyk from DEQ arranged for the inspection once she discovered that the lab existed. *Id.* at 355:12-17. Ron Pfeifer personally consented to the inspection. *Id.* at 163:3-14. Both Pfeifer brothers, State Fire Marshall Nees and Susan Shewczyk attended that meeting. No one from Stumptown was present or took part. *Id.* at 356:9-12.

Plaintiffs hired NRC Environmental Services Inc. ("NRC") on September 6, 2007 to "evaluate chemistry and segregate as needed" and "advise as to save and dispose if requested." Kuhn Decl, Ex. B, RP Depo, 93:12-20; Ex. F, Depo Ex. 108, NRC Work Order. NRC inventoried all of the chemicals on the property. Kuhn Decl, Ex. B, RP Depo, 79:1-25; 80:1-16. The NRC inventory is an accurate nine-page, single-spaced list of chemicals found in Ron Pfeifer's lab. *Id.* at 80:17-23; Ex. D, GP Depo, 123:4-9; Ex. G, Depo Ex. 107, Chemical List. All of the chemistry on this list was packaged and moved to off-site storage that was accessible to Plaintiffs. Kuhn Decl, Ex. D, GP Depo, 123:20-22. Ron Pfeifer did not lose any of the chemicals listed on the nine-page inventory. *Id.* at 123:23-25. In fact, according to Gene Pfeifer, NRC disposed of only two or three chemicals from Ron Pfeifer's lab. *Id.* at 286: 5-17. Prior to NRC's remediation efforts, Plaintiffs never inventoried all the various chemicals on the Stumptown Property. Kuhn Decl, Ex. B, RP Depo, 81:22 - 82:1. None of the above actions involved Stumptown. The actions taken were by governmental authorities regarding chemicals and hazardous materials stored on the property for

<mark>years by plaintiffs or their predecessors. Hytowitz Decl, Ex B, GP Depo, 152:22-153:7;177:22-178:7;182:16-18; 340:11-341:1;345:9-13; Ex A, RP Depo, 77:2-19.</mark>

On September 10, 2007, *the City* issued Plaintiffs a Notice of Violation and Notice of Infraction. Kuhn Decl, Ex. D, GP Depo, 483:22 - 484:22; Ex. H, Depo Ex. 132, Notice of Violation, Notice of Infraction. The Notice informed Plaintiffs that they were in violation of Silverton Municipal Code ("SMC") 15.08.320(B) regarding "hazardous materials." *Id*. The Notice explained that the IDC Building constituted a "dangerous or derelict structure." *Id*. It further explained that the building's second story contained chemicals that were "controlled substances" and specifically listed the following concerns:

> (1) people had been working on the first floor of the building without any notice or warnings; (2) materials had been removed without the benefit of any permits from state or federal hazardous materials regulatory agencies; (3) there was evidence that the materials in the second story were heavily contaminated; and (4) the storage of the materials constituted a violation of the building code. *Id.*

The Notice included a "Statement of Actions Required" which ordered Plaintiffs to "cure the condition" giving rise to the concerns within 30 days of the date of the Notice, and ordered that clean-up work must be "commenced within 24 hours" and "be conducted by licensed hazardous waste contractors." *Id.*

On October 1, 2007, the DEQ issued a Pre-Enforcement Notice informing Plaintiffs that the DEQ had concluded that they were a "large quantity generator of hazardous waste" responsible for eight different violations of state and federal hazardous waste laws. Kuhn Decl, Ex. D, GP Depo, 394:23 - 395:1; Ex. I, Depo Ex. 119, DEQ Pre-Enforcement Notice. Some of the DEQ findings included:

> (1)    "At the time of the inspection, Ron Pfeifer stored unused chemicals in the shed rented by Mr. Gene Pfeifer for twenty years. The chemicals have not been moved or used. Most of the chemicals are undated, degraded and/or unstable";
>
> (2)    "At the time of the inspection, incompatible wastes in bottles were stored together in cardboard boxes in the shed.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

Ethylene oxide, a reactive flammable hazardous waste, was being stored next to an unstable wall. The wall had recently been hit by a car. Waste ethylene was stored next to the well. Additionally, waste sodium cyanide was secondarily contained in cardboard drums in a facility where the electrical wiring was deteriorating because the roof was falling in allowing rain to penetrate";

(3)    "At the time of the inspection, ignitable and reactive wastes were being stored in a shed approximately 40 feet from the property boundary. The high school is two short blocks away from the property and high school students walk past this facility on a daily basis. It has been known that students go into the buildings on this site to smoke cigarettes and loiter";

(4)    "At the time of the inspection, hundreds of discarded containers of chemistries were being stored for over twenty years. These chemical containers were degrading, outdated and unstable. * * * Additionally, several hundred gallons of waste paint and waste thinner were being stored for at least eight years from a previous business run by Mr. Gene Pfeifer";

(5)    "At the time of the inspection, there was no contingency plan for waste storage. None of the containers were labeled appropriately and all the containers of waste had been there longer than eight years";

(6)    "At the time of the inspection, many different kinds of chemicals were being stored along with unknown chemicals. Many of the chemicals were incompatible";

(7)    "At the time of the inspection, at least five employees who worked around the wastes were not trained to manage hazardous waste. In addition the employees were not given proper protective equipment for the handling of such chemicals." *Id.*

The DEQ's Pre-Enforcement Notice further informed Plaintiffs of the dangers of ethylene oxide and sodium cyanide, both found on the Property. *Id.*

In response to the DEQ Notice, Plaintiffs requested an informal hearing. Kuhn Decl, Ex. D, GP Depo, 395:2-4. On October 3, 2007, the DEQ issued a separate Warning Letter informing Plaintiffs of several regulatory violations and an investigation into the possibility of mishandling of asbestos-containing materials. *Id.* at 395:16 - 396:7; Ex. J, Depo Ex. 120, 10/3/07 Warning letter. Plaintiffs responded to the Warning Letter by informing the DEQ that they were in the process of having the asbestos removed professionally and, as a result, no fine was issued. Kuhn Decl, Ex. D, GP Depo, 396:10-14. As to the DEQ fines that were issued, Stumptown paid them. *Id.* at 396:17-

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

24. Plaintiffs paid no portion of the DEQ fines or the NRC clean-up bill. Hytowitz Decl, Ex B, GP Depo 396:23-24; 398:10 – 399:6. Stumptown paid the fines due to the materials accumulated on the properties by the Pfeifers or their entities as no Plaintiff had money. *Id.* at 396:17-24. Stumptown ultimately paid the NRC Cleanup bill due to a mechanics lien being filed when Plaintiffs did not pay the bill, which Plaintiffs were to ultimately pay back to Stumptown but never did, Id. 398:10 – 399:6; 499:15-500:2; 502:5- 504:5; Decl, Hytowitz, Ex C, GP Depo Ex. 133; Ex D, GP Depo Ex 134, Ex E, GP Depo Ex 135.

Plaintiffs have not sued the DEQ or any State agency because they believe the State agencies and their representatives acted reasonably and appropriately in their application and enforcement of applicable health and safety rules and laws. Kuhn Decl, Ex D, GP Depo 248:19-24. Stumptown had no active involvement in the actions of the City or Fire Defendants, let alone the DEQ or any State Agency. Stumptown just happened to be the landowner of the property foreclosed from the Plaintiffs or their predecessor companies or owners where Plaintiffs had occupied and stored the items causing the City and Fire Defendants and the other State Agencies to take their actions. Stumptown abided by the City, Fire and State Agency requirements and actions. Hytowitz Decl, Ex B, GP Depo 491:9-12; 514:21-515:25; 521:7-21; 523:1-18; 526:23-527:16; 531:1-533:6.

### III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the moving party, the Silverton Defendants bear the initial burden of identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24, 106 S. Ct. 2548 (1986). Because Plaintiffs have the burden of proof at trial, the Silverton Defendants need only point out "that there is an absence of evidence to support [Plaintiffs'] case." *Id.* at 325 (alterations added); *see also Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument-the absence of evidence to support plaintiff's claim").

Page 10 -    DEFENDANT STUMPTOWN'S
             MEMORANDUM IN SUPPORT OF
             MOTION FOR SUMMARY JUDGMENT

Once this initial burden is satisfied, Plaintiffs must demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex*, 477 U.S. at 323. Plaintiffs may not rest upon the mere allegations or denials in their pleadings, but must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting FRCP 56(e)) (alterations added); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1107 (9th Cir. 2000) (holding that once the moving party carries its initial burden of production, "the nonmoving parties were obligated to produce evidence in response").

The court must view the evidence in the light most favorable to the Plaintiffs. *Fairbank*, 212 F.3d at 531 (9th Cir. 2000) (citations omitted). Deference to the non-moving party does have some limit. The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

## IV. LEGAL ARGUMENT

All nine of Plaintiffs' claims for relief against the Defendants arise out of the discovery of chemistry and other potentially dangerous conditions on the Property occupied or used by Plaintiffs since before 1950, on September 5, 2007, and the subsequent issuance of the City's Notice of Violation and Infraction requiring clean up of the hazardous waste and other debris on the property. The record in this case establishes that the Defendants acted reasonably, with Plaintiffs' cooperation, and pursuant to the City of Silverton's Municipal Code. Plaintiffs do not contend that the City's Property Maintenance Regulations ("PMRs") are unconstitutional. Rather, the gravamen of Plaintiffs' claims seems to be that the City, through its officers and agents, strictly followed the City's PMRs rather than engaging in an informal, more neighborly manner of addressing the serious safety concerns discovered on the Property. Stumptown as landowner, having purchased from a

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

==bank foreclosure of Plaintiffs or their predecessor related entities, was bound to follow legal orders of the City and Fire Defendants and the State Agencies involved.==

Summary judgment is appropriate on all of Plaintiffs' claims for relief because the City and Fire Defendants were exercising their police power in enforcing the City's Municipal Code, and, despite Plaintiffs' mere assertions of improper motives or ill-advised decision making on the part of the individual officials, the record is clear that all of the City and Fire Defendants acted within their authority, with Plaintiffs' cooperation, and reasonably in light of the circumstances present at the time. ==Stumptown did nothing but abide by the valid orders of the City, Fire and State Agencies. Stumptown is not a governmental agency.==

This Court has supplemental jurisdiction as to related common-law claims pursuant to Oregon law. 42 USC §1367; *Ironwood Homes, Inc. v. Bowen*, 719 F.Supp.2d 1277, 1282 (D. Or. 2010).

**A.    Plaintiffs' Claims Against the Defendant Fails Because the Alleged Unlawful Conduct Falls Within the Proper Exercise of Police Power by the Governmental Entities.**

The exercise of government's authority to promote the health and safety of the populace is commonly referred to as exercise of the "police power." *Robertson v. City of Turner*, 187 Or. App. 702, 707, 69 P.3d 738, *rev. den.* 336 Or. 92 (2003). Municipalities have the right to exercise their police powers to enact ordinances related to the protection of the public health, even if their ordinances interfere with private property rights. *Reduction Company v. Sanitary Works*, 199 U.S. 306, 318-19, 26 S.Ct. 100 (1905). "'Normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like' * * * as well as orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings or other areas' have long been considered permissible exercises of the police power that do not require compensation." *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 334, 122 S.Ct. 1465 (2002) (internal citation omitted). The Oregon Supreme Court has recognized that "the preservation of the health and physical safety of the people is a purpose of prime importance in the exercise of police power." *Baer v. City of Bend*, 206 Or. 221, 224-25, 292 P.2d 134 (1956); *see also*

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

*City of Erie v. Pap's A.M.*, 529 U.S. 277, 296, 120 S.Ct. 1382 (2000) (finding that a city's efforts to protect public health and safety are clearly within its police powers).

There are numerous statutory and regulatory provisions that authorize government officials to exercise their police power to protect the public health and safety where hazardous chemistry is a concern. Oregon Revised Statutes Chapters 465 and 466 pertain to Hazardous Waste and Hazardous Materials and, pursuant to Or. Rev. Stat. 466.010, these statutes are intended to "[p]rotect the public health and safety and environment of Oregon to the maximum extent possible" and "[e]xercise the maximum amount of control over actions within Oregon relating to hazardous waste[.]" The DEQ is authorized to limit, prohibit, or otherwise restrict the storage, treatment or disposal of any hazardous waste if appropriate to protect the public health, welfare or safety or the environment or to prolong the useful life of a hazardous waste disposal site. O.R.S. 466.180(1). Meanwhile, no one shall store a hazardous waste anywhere in this state except at a permitted treatment, storage or disposal site. O.R.S. 466.095; *see also* O.R.S. 466.075 and O.R.S. 466.095.

Chapter 15 of the City of Silverton's Municipal Code contains its Property Maintenance Regulations ("PMRs") (Kuhn Decl., Ex. K, PMRs). The stated purpose of the PMRs is "to protect the health, safety and welfare of Silverton citizens, to prevent deterioration of existing structures, and to contribute to vital neighbourhoods . . . ." SMC 15.08.020. All of the City or Fire Defendants' conduct that Plaintiffs complain about was legitimate governmental action in applying and enforcing the City's PMRs in response to a perceived immediate threat to public health, safety and welfare. Plaintiffs lump in Stumptown with the governmental claims; but Stumptown is not a governmental entity or agent, and was required by law to abide by the decisions of City and Fire Defendants. The conditions or problems enforced by the City and Fire Defendants were all caused, created, stored or abandoned on the site by Plaintiffs or their related entities, not Stumptown. Hytowitz Decl, Ex B, GP Depo 526:23-527:16.

   1.   The Relevant PMRs.

Pursuant to SMC 15.08.385, entitled "**Notice of Status of derelict and dangerous structure,**" when a building official determines that a structure is "derelict" or "dangerous" a notice

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

of infraction must be given to the owner. Additional notices to other affected persons may be given at the discretion of the building official. Further, in a notice of infraction, the building official must provide a "statement of actions required to cure or remedy the condition and, if necessary, the order to vacate described in SMC 15.08.390 and 15.08.400." Kuhn Decl, Ex.K, PMRs.

SMC 15.08.360, entitled "**Dangerous and Derelict Structures – Generally,**" provides that, "[n]o property shall contain any dangerous or derelict structures as described in this chapter" and that "[a]ll such buildings or structures shall be repaired or demolished."

A "derelict structure" is defined as "any building, structure, or portion thereof that * * * [h]as been ordered vacated by the building official pursuant to SMC 15.08.385, 15.08.390 and 12.08.400; or [h]as been issued a notice of infraction by the code enforcement officer * * *." SMC 15.08.370(1)(2). A "dangerous structure" is defined as "[a]ny structure which has any or all of the following conditions or defects, to the extent that life, health, property, or safety of the public or the structure's occupants are endangered[:]"

> "* * * * *
>
> "J. Fire Hazard. Whenever any structure is a fire hazard as a result of any cause, including but not limited to: dilapidated condition, deterioration, or damage; inadequate exists; lack of sufficient fire resistive construction; or faulty electric wiring, gas connections, or heating apparatus.
>
> "K. Other Hazards to Health Safety, or Public Welfare.
>
> > 1. Whenever, for any reason, the structure or any portion thereof is manifestly unsafe for the purpose for which it is lawfully constructed or currently is being used; or
> >
> > 2. Whenever a structure is structurally unsafe or is otherwise hazardous to human life, including but not limited to whenever a structure constitutes a hazard to health, safety or public welfare by reason of inadequate maintenance, dilapidation, unsanitary conditions, obsolescence, fire hazard, disaster, damage, or abandonment."
>
> "* * * * *." SMC 15.08.380.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

SMC 15.08.320 entitled "**Hazardous materials**"[2] states that "[p]roperty shall be free of dangerous levels of hazardous materials, contamination by toxic chemicals, or other circumstances that would render the property unsafe." SMC 15.08.320 (B). Further, all structures are to be "kept free of friable asbestos." SMC 15.08.320(D) .

SMC 15.08.390, entitled "**Statement of actions required**" provides that a notice of "the statement of action" must be given in conjunction with a notice of infraction. SMC 15.08.390(A) . SMC 15.08.390 further provides that if the building official has determined that repair of the building or structure is needed then "the statement of action to cure or remedy condition giving rise to classification of a structure as derelict or dangerous shall * * * require that all required permits be secured and the work physically commenced within such time from the date of the statement and completed within such time as the building official shall determine is reasonable under all of the circumstances." SMC 15.08.390(B)(1) . If the building official determines that a building or structure must be vacated, "the statement shall order that the building or structure shall be vacated within a time certain from the date of the statement as determined by the building official to be reasonable." However, if a code enforcement officer "determines that the alleged infraction presents an immediate danger to the public health, safety or welfare * * * the officer may require immediate remedial action." SMC 15.08.620.

Further, the enforcement provisions of the PMRs provide that a violation of SMC Chapter 15 constitutes a Class 1 civil infraction, which is subject to civil penalties. SMC 15.08.470(A); SMC 15.08.500. A code enforcement officer may serve a summons and complaint immediately upon discovery of an infraction. SMC 15.08.681. However, a notice of infraction "may" be given before a civil infraction summons and complaint is issued. SMC 15.08.580. The giving of a notice of infraction is "at the sole discretion of the code enforcement officer." *Id*. When a notice of infraction is given and the respondent either rejects the notice or fails to cure the alleged infraction within the time specified in the notice, a civil infraction summons and complaint must be served on

---

[2] The PMRs define "Hazardous materials" as "materials defined by the current adopted fire code." SMC 15.08.070.

DEFENDANT STUMPTOWN'S
MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

the respondent. SMC 15.08.660. The service of a civil infraction summons and complaint triggers

a process by which alleged infractions and violations may be disputed and a hearing requested.

SMC 15.08.480-15.08.900 ("Civil Infractions Ordinance").

    2.  <u>The Silverton Defendants' Properly applied and enforced the PMRs.</u>

    On September 10, 2007, in accordance with SMC 15.08.385, the City issued a Notice of

Violation and Notice of Infraction (hereinafter "City Notice") to Plaintiffs <mark>and Stumptown (solely

by virtue of its title ownership at that time of the real estate)</mark>, informing them that the Property

constituted "a dangerous or derelict structure" and that from September 6, 2007, and continuing

each day thereafter, the cited parties "did unlawfully commit the offense of <u>Failure to Maintain</u>

<u>Property in accordance with SMC 15.08.320(B) regarding the presence of Hazardous Material</u> in

violation of Silverton Municipal Code * * *." (Kuhn Decl, Ex. H, Depo Ex. 132, Notice of

Violation, Notice of Infraction). (Emphasis in original). The City Notice further explained:

> "As you know, the site contains a variety of materials which
> constitute chemicals that are controlled substances that were
> located in the second story of the structure. People have been
> working in this environment (first floor) without any notices or
> warnings by the proprietors. Materials have been removed from
> the site without the benefit of any permits from any state or federal
> hazardous materials regulatory agencies. There is currently
> evidence that the materials in the second story are heavily
> contaminated. Based on my personal observation of the site, it is
> clear that the storage of the materials constitutes a violation of the
> building code." *Id.*

The City Notice also contained a "statement of actions required" in accordance with SMC

15.08.390 that reads:

> "* * * you are to cure the condition giving rise to the structures
> classification as a dangerous/derelict structure. All required
> permits from appropriate state and federal environmental
> authorities must be obtained prior to the commencement of any
> remediation. The Defendants shall file the remediation plan,
> including contact information for the contractors prior to the
> commencement of any further entry onto the site. The work must
> be physically commenced within 24 hours and must be conducted
> by licensed hazardous waste contractors. Any removal from the
> site or contamination of any other site shall be deemed to be a
> violation of the Silverton Municipal Code and subject to further
> enforcement action. The work must be completed within 30 days
> of the date of this notice of violation. The defendants shall notify

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

> the city of any licensed contractors selected by any of the
> defendants who have been retained to complete the remediation.
> Access to the site for any other purposes by any other persons shall
> be deemed to be a violation of the Silverton Municipal Code and
> subject to prosecution." *Id.*

The City Notice further informed Plaintiffs that if they refused to accept or comply with the

statement of actions required a civil infractions summons and complaint would be issued against

them. *Id.* Plaintiffs did not dispute the City's Notice, but rather facilitated the cleanup efforts and

cooperated with the remediation of the Property.

The evidence in the record establishes that the City and Fire Defendants properly applied

and enforced Silverton's PMRs, Fire and DEQ rules. There is no dispute that the Property

contained potentially hazardous materials. Gene Pfeifer admits that on September 5, 2007, there

was asbestos on the property. Kuhn Decl, GP Depo, 172:13-15. Plaintiffs also admit that

radioactive material, cyanide, and ethylene oxide were stored on the property. *Id.* at 152:22 - 153:7;

177:22 - 178:7; 182:16-18. Gene Pfeifer testified that since 2000 he was aware of an environmental

assessment of the property done as part of the foreclosure that raised concerns about chemicals and

other materials, and yet admits that he never took any remedial action with respect to the chemicals.

*Id.* at 238:5-25. Plaintiffs admit that in the seven years following the 2000 assessment, the

chemicals remained uninventoried, untouched and in essentially the same location. *Id.* at 239:1-5.

The conditions had been there since the building probably was procured by Plaintiffs' father.

Hytowitz Decl, Ex B, GP Depo 230:2-17.

In addition to the undisputed evidence of the potentially hazardous chemistry and materials,

the record further establishes that even before the Silverton City and Fire Defendants began

enforcing the PMRs, City officials communicated their concerns about the hazardous materials with

Plaintiffs. Kuhn Decl, Ex D, GP Depo, 203:17-22; 232:14-15. Plaintiffs responded to that concern

by cooperating with the officials and participating in the efforts to remediate the property. *Id.* at

229:8-18.

When a building official becomes concerned about a potentially hazardous material posing a

risk to public health and safety and believes that property is in violation of the City's PMRs or Fire

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

or other codes, the official has no choice but to either issue a notice of infraction or serve a civil infraction summons and complaint. SMC 15.08.380(K); SMC 15.08.385; SMC 15.08.681. If a notice of infraction is given, the PMRs require the building official to provide a "statement of actions required" to cure or remedy the alleged infraction. SMC 15.08.385 and 15.098.390(A). SMC 15.08.610 provides that the recipient of the notice must be given a reasonable time to cure the alleged infraction that is not less than 24 hours but is no more than 30 days. However, if the official determines that the alleged infraction presents "an immediate danger to the public health, safety or welfare" the official is authorized to require immediate remedial action. SMC 15.08.620.

In the present case, Plaintiffs responded to the government officials' concerns promptly and without objection. Plaintiffs never took issue with the officials' concerns nor did they dispute the City's Notice. The evidence establishes that the City and Fire Defendants properly exercised their police power and proceeded with routine enforcement of the City's PMRs and Fire and Safety or hazard codes. Accordingly, the Silverton City and Fire Defendants are immune from liability as to all of Plaintiffs' claims against them and summary judgment should be entered in their favor. Similarly, Stumptown was itself subjected to the police power of the City and Fire Defendants and other government agencies and required to abide by their orders. Stumptown is not a governmental agency or entity, but a private party landowner required to follow the valid orders of the government entities in this case, as were Plaintiffs. Stumptown is entitled to immunity from liability in this case.

## B.    Defendants are Entitled to Summary Judgment on Plaintiffs' Section 1983 Claim.

To establish a 42 U.S.C. § 1983[3] claim, a plaintiff must prove by a preponderance of the evidence that: (1) defendants acted under color of law; and (2) the conduct deprived plaintiff of a right protected by the laws or constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527,

---

[3] 42 U.S.C. § 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ***.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

535, 101 S.Ct. 1908 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330,

106 S.Ct. 662 (1986); *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir.1988).  A constitutional

violation occurs if the person acting under color of law "does an affirmative act, participates in

another's affirmative acts, or omits to perform an act which he is legally required to do" which

causes the constitutional deprivation of which plaintiff complains.  *Leer*, 844 F.2d at 633.  In order

to state a claim for relief under section 1983, Plaintiffs must link each named defendant with some

affirmative act or omission that demonstrates a violation of Plaintiffs' federal rights.  Plaintiffs

cannot do this.

      In the present case, Plaintiffs claim that the Defendants violated their rights to due process.

It is unclear from the operative complaint whether Plaintiffs' claims are founded on an alleged

procedural or substantive due process violation.  Consequently, Defendant addresses the failure of

both potential claims.

      1.  <u>Plaintiffs cannot prove a substantive due process violation.</u>

      The concept of "substantive due process" prohibits "the government from depriving a

person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with

rights implicit in the concept of ordered liberty.'"  *Nunez v. City of Los Angeles*, 147 F.3d 867, 871

(9th Cir. 1998) quoting *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095 (1987).  To

establish a violation of substantive due process, "a plaintiff is ordinarily required to prove that a

challenged government action was clearly arbitrary and unreasonable, having no substantial relation

to the public health, safety, morals, or general welfare."  *Patel v. Penman*, 103 F.3d 868, 874 (9[th]

Cir.1996) (citations and internal quotations omitted).

      As a threshold matter, Plaintiffs must show "a government deprivation of life, liberty, or

property.  *Nunez*, 147 F.3d at 871.  However, "[t]he protections of substantive due process have for

the most part been accorded to matters relating to marriage, family, procreation, and the right to

bodily integrity."  *Id.* at 871, n.4, quoting *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807

(1994).  Where, as here, Plaintiffs rely on substantive due process to challenge governmental action

that does not impinge on a fundamental right, the Ninth Circuit employs the following test:

Page 19 -  DEFENDANT STUMPTOWN'S
        MEMORANDUM IN SUPPORT OF
        MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

"we do not require that the government's action actually advance
its stated purpose, but merely look to see whether the government
could have had a legitimate reason for acting as it did." *Halverson
v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir.1994).

It is well-established in this Circuit that when a challenge is made to a municipality's land

use action, a plaintiff must show that the governmental action failed to advance *any* legitimate

governmental purpose. *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir.2008). Only "egregious

official conduct" that "must amount to an abuse of power lacking any reasonable justification in the

service of a legitimate governmental objective" is actionable. *Id.*; *accord North Pacifica LLC v.

City of Pacifica*, 526 F.3d 478, 485 (9th Cir. 2008) (to succeed on a substantive due process claim,

plaintiffs "must show that the City's delays in processing an application lacked a rational

relationship to a governmental interest").

Assuming, *arguendo*, that Plaintiffs had a protectable property right,[4] Plaintiffs cannot show

that the deprivation of that interest resulted from an abuse of government power sufficient to

constitute a constitutional violation. "Where the governmental action has a substantial relation to

the general welfare, the action is not arbitrary and unreasonable and not violative of substantial due

process." *Armendariz v. Penman*, 31 F.3d 860, 867 (9th Cir.1994), *aff'd in part*, 75 F.3d 1311

(1996), *overruled on other grounds by Crown Point Dev. Inc. v. City of Sun Valley*, 506 F.3d 851,

856-57 (9th Cir. 2007). The record is clear that the City and Fire Defendants' acted pursuant to the

City's PMRs, the Fire and Hazardous codes and in an effort to advance legitimate governmental

interests in public health and safety. *See Armendariz*, 75 F.3d at 1328 ("The City has an obvious

interest in preventing safety and sanitation hazards by enforcing the housing code."). Given that

Plaintiffs cannot meet their burden of proof to show that the City and Fire Defendants' conduct was

irrational, egregious and amounted to an abuse of power, Plaintiffs' substantive due process claim

fails as a matter of law. ==Stumptown as a private entity did not take any governmental action and as==
==such cannot abuse a government power. And in this instance did not.==

---

[4] Defendant does not concede this point because there is evidence that Plaintiffs' lease agreement
did not cover much of the property they were using for storage, including the Turkey Shed and
Tile Building, and that Plaintiffs were behind in their rent on the portions of the property that

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

2.  Plaintiffs cannot prove a procedural due process violation.

A procedural due process claim requires Plaintiffs prove two elements: (1) a deprivation of a protectable property interest; and (2) a denial of adequate procedural protections. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (citing *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998)).  The fundamental requirements of procedural due process are notice and an opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893 (1976); *Conner v. City of Santa Anna*, 897 F.2d 1487, 1492 (9th Cir. 1990).  Although due process generally requires some type of hearing before the deprivation of a protected property interest, there are recognized exceptions to the pre-deprivation hearing requirement.  *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1317 (9th Cir. 1989).

The Supreme Court has held that:

> "the necessity of quick action by the State or the impracticality of providing any meaningful deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908 (1981), *rev'd on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986).

"It is well-settled that protection of the public interest can justify an immediate seizure of property without a prior hearing." *Sorrano's*, 874 F.2d at 1318; *see Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299-300, 101 S.Ct. 2389 (1981) (Summary governmental action taken in emergencies and designed to protect the public health, safety, and general welfare does not violate due process.).

Plaintiffs do not allege what procedural protections they were entitled to before the City issued the Notice on September 10, 2007.  Nonetheless, the evidence establishes that the City Defendants acted pursuant to the PMRs and that Plaintiffs had the opportunity to invoke all the procedural protections afforded to them by those regulations.  The City's Notice identified the specific violations found, informed Plaintiffs of the remedial action necessary to avoid further

were covered by the lease.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

enforcement action, and informed Plaintiffs of the process that would be triggered if they chose to deny the alleged infraction.[5] Plaintiffs did not deny the infraction. Instead, they cooperated with the remediation efforts. Plaintiffs never triggered the additional process afforded to them.

Plaintiffs' due process claim fails as a matter of law because they were afforded adequate procedural safeguards under the City's PMRs and there is no evidence of a causal connection linking any named defendant with some affirmative act or omission that deprived Plaintiffs of due process. Likewise, as a private entity, Defendant Stumptown did not perform or undertake any of the procedural processes alleged against the City and Fire Defendants in the Third Amended Complaint. Stumptown was required to abide by the orders of the City and Fire Defendants and other Government entities involved. It took no procedural government actions.

Here, Plaintiffs or their agents gave permission to the City/Fire Defendants to enter and view the property. Stumptown did not perform any of the government processes alleged in the Complaint which City/Fire Defendants performed per the PMR's and Fire and Safety Codes. Stumptown is entitled to summary judgment on these claims.

3. In any event, the individual City Defendants are entitled to Qualified Immunity which should also apply to Stumptown as it was subjected to City's actions due to the conditions created and/or maintained by Plaintiffs on the real property.

As city officials, the City Defendants are entitled to assert qualified immunity from suit pursuant to section 1983. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683 (1974). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsythe*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985); *see Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001) (qualified immunity is the right not to stand trial or face the other burdens of litigation). As such, "a defendant is entitled to a ruling on qualified immunity 'early in the proceedings so that the

---

[5] SMC 15.08.684 provides the initial process that would have been triggered if Plaintiffs had objected to or failed to comply with the City's Notice. Specifically, SMC 15.08.684(C) provides for a hearing if requested. SMC 15.08.700 and 15.08.710 provide that at a hearing the respondent may be represented by legal counsel, present evidence and witnesses, and cross-examine any witnesses.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

costs and expenses of trial are avoided where the defense is dispositive.'" *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001) (quoting *Saucier*, 121 S.Ct. at 2156).

    The doctrine of qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions are reasonable in light of the legal rules that were clearly established at the time of their conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982). Qualified immunity serves the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894 (1978). It is a creation of policy designed to strike a balance that allows compensation for persons who suffer injury caused by lawless conduct, but avoids over-deterring officials where their duties legitimately require action in situations not implicating clearly established rights. *Harlow*, 457 U.S. at 819. Qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)).

    To determine if a defendant is entitled to qualified immunity, courts employ the sequential analysis set forth by the Supreme Court in *Saucier, supra*. First, a court must decide whether the alleged facts establish a violation of a constitutional right. Saucier, 533 U.S. at 201; *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc). If no constitutional right would have been violated under the facts alleged, the analysis ends. *Saucier*, 533 U.S. at 201. If a violation could be established, a court will then consider whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id.* This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* The court must determine whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id.* at 202. If the law does not put the official on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate. *Id.*

    For the reasons set forth in Sections B1 and B2 above, there is no evidence of a due process violation, and therefore the qualified immunity analysis ends and judgment should be entered in the

Page 23 - DEFENDANT STUMPTOWN'S
       MEMORANDUM IN SUPPORT OF
       MOTION FOR SUMMARY JUDGMENT

City Defendants' favor on Plaintiffs' section 1983 claim. Having lumped in all Defendants in their claims, Stumptown as a private party, subjected to the valid orders of the City and Fire Defendants, is equally entitled to judgment in its favor as it could not violate any of Plaintiffs' due process rights to sustain a section 1983 claim in favor of Plaintiffs.

If, however, this court finds that Plaintiffs have sufficient evidence to support a cognizable due process claim, the City Defendants are entitled to qualified immunity because there is no evidence that they violated a clearly established right. In other words, there is no evidence to suggest that it would have been clear to a reasonable City official that his or her conduct was unlawful in this situation. The undisputed facts show the City officials acted pursuant to their authority provided by the City's PMRs. There is no evidence that any City official unlawfully deviated from their official roles, or that any officials did not reasonably believe their conduct to be lawful. The record clearly contains evidence from which a reasonable official could have concluded that the Stumptown Property posed a threat to public safety, health and welfare and that the occupants and neighbors might be imminently endangered. Even if in hindsight the individual City Defendants' decisions were erroneous, Plaintiffs cannot prove that a reasonable official could not have reached the same conclusion. Accordingly, the City Defendants and Stumptown similarly in abiding by City/Fire Departments' orders are entitled to qualified immunity and Plaintiffs' section 1983 claim against them should be dismissed.

4. Plaintiffs cannot prove municipal liability or other similar liability against Stumptown.

There is no vicarious liability under section 1983. *Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382 (1997).* Instead, municipalities are liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort. *Monell v. Dept. of Social Serv. of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). "The 'official policy' requirement 'was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality,' and thereby make clear that municipal liability is limited to action for which the

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292 (1986) (emphasis in original).

Additionally, as a preliminary matter, "[b]efore a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy 'evidences a deliberate indifference' to [his] constitutional rights." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-90, 109 S.Ct. 1197 (1989)) (alterations added). This occurs when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers *** can reasonably be said to have been deliberately indifferent to the need." *Id.* (Alterations in original).

To establish a section 1983 claim against a city, a plaintiff must show (1) the deprivation of a constitutionally protected right; (2) that the city had a policy; (3) that the policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.' " *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. at 389-91). There also must be a "direct causal link" between the policy or custom and the injury, and plaintiff must be able to demonstrate that the injury resulted from a "permanent and well settled practice." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (internal quotations omitted).

It is unclear from Plaintiffs' allegations how they claim that the City, let alone Stumptown, violated their due process rights. Nonetheless, even if this Court finds there is sufficient evidence to allow Plaintiffs to proceed with their due process claim, the City cannot be liable as a matter of law because there is no evidence that a municipal policy or custom caused Plaintiffs' alleged constitutional injury. Moreover, there is no evidence of a deliberate indifference to Plaintiffs' constitutional rights. Accordingly, summary judgment should be entered in the City's and Stumptown's favor against Plaintiffs' section 1983 claim. Stumptown took no action under color of state law in its involvement in the challenged conduct *ordered* by

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

the City/Fire officials. See *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924 (2001) (stating that there are circumstances in which "seemingly private behavior may be fairly treated as that of the State itself"). Acting "under color of state law" requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49, 108 S.Ct. 2250 (*quoting United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, (1941)).

Plaintiffs cannot prove a §1983 claim against Stumptown. To constitute state action, first, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and second, "**the party charged with the deprivation must be a person who may fairly be said to be a state actor**." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744 (1982) (emphasis added).

The Supreme Court has articulated and refined a number of tests that can be used by courts in determining whether the challenged conduct can be attributed to the state: (1) the "public function" test, which examines "whether the function performed has been traditionally the exclusive prerogative of the State," *Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. 2764; (2) the "close nexus" test, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449 (1974); (3) the "state compulsion" test, wherein a court determines whether a state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State," *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777 (1982); and (4) the "joint action" test, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598 (1970). Here the test that applies is the fourth, that of "joint action."

Page 26 -  DEFENDANT STUMPTOWN'S
MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

In *Adickes*, the petitioner alleged that she was refused service by respondent, an employee at a store, because the respondent, "and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in The Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes." *Id*. By coming to such an agreement the private party was in essence acting under the color of law.

Stumptown is a private party, not the State or one of its officials. Plaintiffs cannot show that Stumptown, and the State or its officials somehow reached an understanding to purportedly deny Plaintiffs of their Constitutional rights. Because Stumptown is a private party, did not act in collusion with the State officials, and did not perform any of the actions alleged which purportedly deprived Plaintiffs of their Constitutional privileges, summary judgment in favor of Defendant Stumptown on Plaintiffs' Claim for Relief of Violation of Due Process under 42 USC §1983 must be granted.

**C.    Defendants are Entitled to Summary Judgment on Plaintiffs' State Law Claims.**

1.    There is no genuine issue of material fact regarding plaintiffs' negligence claim.

Under Oregon law, to state a claim in negligence, a plaintiff must allege facts that show the defendant owed a duty of care, the defendant breached the duty, and the breach was the cause in fact of some legally cognizable damage to plaintiff.  *Cook v. Sch. Dist. UH3J,* 83 Or.App. 292, 294, 731 P.2d 443 (1987); *Brennan v. City of Eugene*, 285 Or. 401, 405, 591 P.2d 719 (1979).  In addition, "in order for there to be a valid cause of action in negligence the harm must be foreseeable." *Yanzick v. Tawney*, 44 Or.App. 59, 64, 605 P.2d 297, *rev. den.* 288 Or. 677 (1980).

In the present action, Plaintiffs' negligence claim alleges that the City Defendants as well as all Defendants were negligent in taking or failing to take one or more of the following actions:  (1) "failing to take actions with due care," (2) "[failing to give] proper notice in regard for person and business property rights," and (3) failing to reasonably investigate matters and reasonably and fairly act on those matters[.]" Third Am. Comp. ¶ 45.  Plaintiffs' claim fails as a matter of law because

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

they are unable to support their mere assertions with sufficient evidence to create a genuine issue of material fact.

The evidence in the record establishes that the City Defendants acted pursuant to the City's PMRs, within their discretion, and reasonably in light of the condition of the property created by the plaintiffs or their predecessors in interest.

Despite their cooperation with the remediation efforts, Plaintiffs now take issue with the manner in which the City Defendants enforced the PMRs. As explained in preceding sections, the City Notice was issued pursuant to SMC 15.08.385. That Notice gave Plaintiffs 24 hours to begin addressing the violation and 30 days to complete the remediation work regarding the hazardous materials and other chemistry on the Stumptown Property that posed a risk to health and safety. The evidence further demonstrates that the City Defendants were not the only government agency concerned about the condition of the Stumptown Property *and the manner in which Plaintiffs stored and maintained the chemistry.* The record demonstrates that, according to Plaintiffs, the State agency officials' actions were reasonable and appropriate.

Plaintiffs may not rest on their mere conclusory allegations. In order to survive summary judgment, they must come forward with evidence supporting their allegations. Fed. R. Civ. P. 56(e). Specifically, Plaintiffs must show with evidence how the Defendants failed to use due care, in what way the City's Notice was improper, and just how the Defendants' failed to reasonably investigate and act fairly. Stumptown was required to follow the valid orders of the governmental agencies.

Plaintiffs' negligence claim against Stumptown fails as a matter of law.

**1. Stumptown Properties, LLC's conduct was reasonable in light of the commercial landlord – tenant relationship.**

While none of the above elements of negligence set out in the first paragraph of this section C above can be established by Plaintiffs, the most telling is that of Stumptown's conduct. Although, often reasonableness of conduct is something to be tried by a factfinder, in some cases

Page 28 -   DEFENDANT STUMPTOWN'S
            MEMORANDUM IN SUPPORT OF
            MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

it is so obvious that the Court may determine it. *Donaca v. Curry County*, 303 Or. 30, 734 P.2d 1339, 1344 (1987). This is one of those cases.

Plaintiffs claim that there should have been regular inspections to the premises prior to those done by the City/State entities, and that such inspections could have determined "unusual hazardous conditions… or that the paint and Chemistry conditions would have been addressed or cleaned up economically and with mutual cooperation…." (Pls. Third Am. Comp. ¶34). There is no proof of such actions or efforts and plaintiffs' had full control and use of the property for many years before and after Stumptown became the fee title owner.

Plaintiffs burden the landowner with untenable responsibility in these allegations. In the first instance, Plaintiffs incorrectly assert that the landowner has a responsibility to inspect the premises of his lessee on a regular basis in order to discover hazardous conditions *that the Plaintiffs themselves created.* In the second instance, Plaintiffs, and specifically Ron Pfeifer, are in a far better position to understand chemical hazards or dangerous conditions created by chemicals than is Stumptown. If Plaintiffs did not recognize the hazard created with actual chemistry skill, how can that expectation be placed on Stumptown?

Stumptown's conduct was reasonable. To determine whether a defendant's conduct is reasonable under Oregon law the following factors may be considered: "(1) the 'likelihood of harm;' (2) the 'severity of the possible harm;' (3) the 'cost of action that would prevent harm;' and (4) the 'defendant's position, including the defendant's relationship with the plaintiff.'" *Fuhrer v. Gearhart By the Sea, Inc.*, 760 P.2d 874, 878 (Or. 1988).

To review the case at hand it is best to start with the fourth factor, that of the defendant's relationship with the plaintiffs. When a defendant's relationship to the plaintiff consists of a special relationship defined by existing law, Oregon courts examine the reasonableness of

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

defendant's conduct under that special definition. *See Rex v. Albertson's, Inc.*, 102 Or.App. 178, 792 P.2d 1248, 1249 (1990) (the "obligations of a storekeeper to a customer create a 'special relationship' that takes the claim out of the general standards of common law negligence."). In that vein, the analysis of the reasonableness of Stumptown's conduct should proceed under the relationship of a commercial landlord and tenant.

In the absence of an agreement to the contrary, a lessor of premises is generally not responsible to persons on the land for conditions that develop or are created after possession has been transferred, unless the landowner retains some right to control the use of the premises. Prosser, Torts 400, s 63 (4th ed 1971). *Catale v. Vanport Mfg., Inc.*, 738 P.2d 599 (Or. Ct. App. 1987). In *Catale*, the lessee created a pool on the land after taking possession of it and a child drowned in the pool. However, because the owner of the property had not retained any right to control the property nor required the tenant to seek approval for improvements on the property, the Court granted summary judgment to the property owner. *Id.* In a commercial landlord relationship, the autonomy of the lessee from the lessor has extended to the landowner having no duty to make repairs. *McWilliam v. Phillips Petroleum, Inc.*, 525 P.2d 1011 (Or. 1974); *Bell v. Barnard Motors Inc.*, 537 P.2d 86 (Or. 1975).

There is a body of cases that modify the holding in *Catale* if there is a third-party injury or if conditions exist prior to turning over of the property, but these are not pertinent. *Compare Bellikka v. Green*, 762 P.2d 997 (Or. 1988); *and, Jensen v. Meyers*, 441 P.2d 604 (Or. 1968). Here, the Plaintiffs are the tenants and not a third-party. Furthermore, Plaintiffs have been on the property uninterrupted for over 30 years – meaning the condition of the land was already in place when Stumptown took ownership, making them not responsible for it. Plaintiffs created the

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

hazardous condition from which flowed the issues that they are now attempting to pin on Stumptown.

The special relationship of commercial landlord and tenant in this case creates the limits of duty. Because Plaintiffs created the Chemical conditions after they were on the property, and Stumptown had no duty to inspect the property of their tenant, and did not retain control of the activities of the lessees on the property, Stumptown cannot be negligent. As a matter of law, Stumptown has no liability in negligence and must be granted Summary Judgment.

**2. Defendant Stumptown's conduct was not the cause of the harm.**

The fourth negligence element Plaintiffs have to prove is that the conduct of Defendant was the cause of the harm. *Solberg v. Johnson*, 306 Or. 484, 760 P.2d 867, 870 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J*, 734 P.2d 1326). The facts of this case show that:

o   Plaintiffs and agents of the Plaintiffs were the owners of the "Chemistry", and not Stumptown.

o   That Plaintiffs or agents of the Plaintiff, when requested by the City/State officials, granted permission for officials to enter their property.

o   Plaintiffs or Plaintiffs agents offered to show the officials around their property.

o   Plaintiff Ron Pfeifer and his father moved the ethelyne oxide to the shed.

For purposes of Summary Judgment, taking the facts alleged by Plaintiffs as true, the only conduct that Stumptown took was to tell Pfeifer to remove their property and clean up the former Square Deal portion of the property for the new tenant at 600 Water. The Plaintiffs did not lease the 600 Water portion of the property. The inspectors came to the property due to a new business license application by the new tenant on that portion of the property. Based on the undisputed facts, no rational juror could find that Stumptown's conduct caused the alleged harm.

Because Plaintiffs cannot prove that Stumptown caused the alleged harm, summary judgment should be entered in the Defendant's favor.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

2.  There is no genuine issue of material fact regarding plaintiffs' trespass claim.

Under Oregon law, a claim of trespass is established when a plaintiff produces evidence that defendant intentionally intruded onto the plaintiff's property causing damage to the plaintiff, without the plaintiff's authorization or consent. *Huffman and Wright Logging Co. v. Wade*, 317 Or. 445, 469 n. 8, 857 P.2d 101 (1993). Trespass requires proof of culpable conduct. *See Carvalho v. Wolfe*, 207 Or.App. 175, 182, 140 P.3d 1161 (2006) (explaining that trespass is not a strict liability tort).

Consent is a defense to an action for trespass. *Hager v. Tire Recyclers, Inc.*, 136 Or.App. 439, 443, 901 P.2d 948 (1995). An action for trespass cannot be maintained if the possessor of land consented to the entry on the property for a particular purpose. *Hawkins v. Barber*, 263 Or. 416, 418, 502 P.2d 591 (1972). Consent is established where the evidence shows that the possessor of land had an "actual willingness" to allow the trespasser to "engage in the particular type of entry." *Colmus v. Sergeeva*, 175 Or.App. 131, 135, 27 P.3d 166 (2001).

A third party may consent to the search of another person's property if "the consenting party has either actual or apparent authority to give consent." *United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir.2005) (citing *United States v. Davis*, 332 F.3d 1163, 1169 (9th Cir.2003) ("A third party has actual authority to consent to a search of a container if the owner has expressly authorized the third party to give consent or if the third party has mutual use of the container and joint access or control over the container."). Under Oregon law, apparent authority exists when a principal allows an agent "to appear to have the authority to bind the principal." *Taylor v. Ramsay-Gerding Const. Co.*, 345 Or. 403, 410, 196 P.2d 532 (2008) (breach of warranty action).

As an initial matter, Plaintiffs have the burden of proving that they had a sufficient possessory interest in the portions of the Stumptown Property that they claim defendants intruded upon. Plaintiffs allege that the trespass occurred when the authorized inspection of the 600 Building "continued to 118 Brown which included the locked Tile Building" and that "111 Brown was

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

entered without prior notice to the Plaintiffs, or Plaintiffs' knowledge or approval."[6] Third Am.

Comp. ¶ 28. Neither 111 nor 118 Brown is listed in Plaintiffs' lease agreement with Stumptown,

LLC. Instead, the lease refers only to "the premises known as 622 N. Water Street." Kuhn Decl,

Ex. C, Depo Ex. 127, Lease Agreement.

Even assuming Plaintiffs' possessory interest in the Tile Building and Turkey Shed can be

sufficiently established to support a claim in trespass, Plaintiffs' claim fails because there is no

evidence of an intentional intrusion and the undisputed facts are that Mr. Jones, the City's building

official, along with other government officials, were initially invited by Ms. Guthrie, an IDC

employee, to view the areas of the Stumptown Property that Plaintiffs' used for storing debris and

chemistry. The evidence is that at the time of the alleged trespass, Gene Pfeifer had placed

Ms. Guthrie, a member of the IDC management team, in charge of the crew of IDC employees

cleaning out the 600 Building. Ms. Guthrie went into the IDC office building and came out with a

key that she used to open the locked door on the Tile Building. Shortly thereafter, Gene Pfeifer

came out of the IDC Building and personally interacted with the officials. Mr. Pfeifer testified that

he toured areas of the property with officials, cooperated with the investigation, and never objected

to the officials' presence on the property. Further, Mr. Pfeifer agreed to meeting with the officials

again on the property the next day and invited his brother to attend the meeting so that he could

participate as well. Ron Pfeifer admits that he personally consented to the officials' investigation of

his lab on the second floor of the IDC Building. Stumptown was not at any of the later meetings on

either September 5, 2007 or September 6, 2007 when the Pfeifer's met with the City/Fire and other

governmental officials. Dr. Dalisky was only there when he was called about the Fire Department

ordering the power cut to certain parts of the property as the owner and member of Stumptown.

Based on the undisputed evidence, Plaintiffs' trespass claim fails because on September 5,

2007, the Defendants' were authorized to be on the Stumptown Property and Plaintiffs, personally

and through their agents, consented to the Defendants' presence in the Tile Building and Turkey

---

[6] Defendants assume Plaintiffs' reference to "111 Brown" is a typo and what was meant was
"110 Brown."

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

Shed.  Accordingly, the Defendants, including Stumptown are entitled to summary judgment against Plaintiffs' trespass claim.

    3.  <u>There is no genuine issue of material fact regarding plaintiffs' abuse of process claim.</u>

Abuse of process is "the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause." *Larsen v. Credit Bureau*, 279 Or. 405, 408, 568 P.2d 657 (1977) (citation omitted).  Courts have also described the claim as "the use of the process as a club by which to extort something unrelated to the process from the other party." *Clausen v. Carstens*, 83 Or.App. 112, 118, 730 P.2d 604 (1986).  (citations omitted).

To sufficiently plead a claim for abuse of process, "a plaintiff must allege some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Columbia County v. Sande*, 175 Or. App. 400, 408, 28 P.3d 657 (2001), citing *Larsen*, 279 Or. at 408.  The "willful" act must consist of "[s]ome definite act or threat," and no liability attaches where the defendant only "carr[ied] out the process to its authorized conclusion even though with bad intentions." *Id.* (Internal quotations and citations omitted).

Plaintiffs' abuse of process claim alleges that the Defendants' "actions * * * involve[d] the use of legal process" for the improper purpose of interfering with Plaintiffs' rights and "whitewash[ing] the City's failures to have earlier detected any actual concerns over materials and the premises * * *." Third Am. Comp., ¶ 49.  Plaintiffs' claim is intentionally vague as to the alleged legal process the City Defendants' abused in this case because no legal proceedings were initiated against the Plaintiffs.  And Plaintiffs again lump in *all* Defendants in their claim.

The City's issuance of the September 10, 2007 Notice of Violation and Infraction did not initiate a legal proceeding.  If the City Defendants had wanted to initiate legal proceedings they could have done so immediately upon discovering the infractions by issuing a civil infraction summons and complaint under SMC 15.08.681.  Rather than pursue a civil enforcement action, the City Defendants chose to provide Plaintiffs with the Notice and an opportunity to remedy the infraction under SMC 15.08.580.  Plaintiffs did not dispute the Notice of Violation/Infraction and,

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

instead, complied with the actions required by it, thereby never triggering a legal proceeding against them. Without the necessary element of a legal proceeding, Plaintiffs' abuse of process claim fails.

Nonetheless, even assuming the issuance of the City's Notice can support a claim for abuse of process, Plaintiffs have not alleged, nor is there any evidence of, an ulterior purpose to extort something unrelated to the process. If by "whitewash[ing]" the City's alleged early failures to address the concerns over the debris and chemistry located on the Stumptown Property, Plaintiffs mean that the City's Notice was merely a ploy to violate Plaintiffs' rights and cover up an alleged earlier and improper lack of enforcement of the City's PMRs, are Plaintiffs not thereby admitting that enforcement of the PMRs was appropriate, just delayed?

Though it is difficult to make sense out of Plaintiffs' allegations, the undisputed evidence demonstrates that the City Defendants' issued the Notice of Violation/Infraction because of concern about the hazardous aspects of the Plaintiffs' debris and chemistry on the Stumptown Property. There is simply no evidence of any willful act other than the application of the City's PMRs. Plaintiffs may not rest upon their mere allegations, but must come forward with specific evidence supporting their claim and showing that there is a genuine issue of material fact for trial. *Devereaux, supra,* 263 F.3d at 1076. Plaintiffs are unable to do this. Stumptown did not perform any process or use the process as a club or to extort a behavior from Plaintiffs. Accordingly, Stumptown as well as the other Defendants is entitled to summary judgment against Plaintiffs' abuse of process claim.

4. <u>There is no genuine issue of material fact regarding plaintiffs' wrongful civil proceedings claim.</u>

Under Oregon law, a claim of malicious prosecution allows recovery when a civil or criminal proceeding has been wrongfully initiated, the proceedings have terminated in the plaintiff's favor, the proceedings were initiated without probable cause and for an improper purpose, and the plaintiff suffered resulting damages. *Mantia v. Hanson,* 190 Or. App. 412, 418-19, 79 P.3d 404 (2003) (quoting *Restatement* at § 587, comment a); *see generally Alvarez v. Retail Credit Ass'n,* 234 Or. 255, 259-60, 381 P.2d 499 (1963) (describing elements of wrongful initiation cause of action).

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

Malicious prosecution actions are not favorites of the law. *Humbert v. Knutson*, 224 Or. 133, 140, 354 P.2d 826 (1960). If any element of a malicious prosecution claim is left unproven, the plaintiff's case must fail. *Rose (Betty) v. Whitbeck*, 277 Or. 791, 795, 562 P.2d 188, *modified on other grounds*, 278 Or 463, 564 P2d 671 (1977).

Plaintiffs' malicious prosecution claim fails in several respects. First, Plaintiffs cannot prove that a civil proceeding was initiated against them, let alone that one was wrongly initiated against them. As explained in the preceding section, the Defendants did not initiate legal proceedings against Plaintiffs.

Second, Plaintiffs cannot satisfy the requirement that a wrongfully initiated civil proceeding terminated in their favor. Not only have Plaintiffs failed to plead this element, which is alone a sufficient basis for dismissal of Plaintiffs' claim, there is no basis for it in fact. *See Restatement (Second) of Torts* § 658 (1977) (plaintiff must plead and prove that prior criminal proceeding terminated in plaintiff's favor).

Finally, Plaintiffs cannot produce evidence sufficient to create a genuine issue as to a lack of probable cause and improper motive. The evidence in this case is that the City/Fire Defendants perceived a serious threat to public health, safety and welfare and pursued the protections afforded by the City's PMRs, Fire Safety ordinances, rules of the State DEQ and State Fire Marshall. Plaintiffs' have no claim against Stumptown as it did not commence civil proceedings arising out of the circumstances of this case against Plaintiffs. To the extent the State Department of Environmental Quality ("DEQ") assessed civil penalty jointly and severally against the Plaintiffs and Stumptown solely as land owner, for violations found on the property due to the Plaintiffs' violations, that DEQ action was not initiated by Stumptown. Further, Defendant Stumptown ended up paying the penalty and reaching settlement with the DEQ due to Plaintiffs' financial inability to pay. Accordingly, Defendant Stumptown is entitled to summary judgment in its favor against Plaintiffs' wrongful civil proceedings claim.

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

5.   There is no genuine issue of material fact regarding plaintiffs' conversion claim.

The tort of conversion is the intentional exercise of control over a chattel belonging to another that is so serious an interference with the other's right to control the chattel that the actor must be required to pay the other the full value of the chattel. *Bergeron v. Aero Sales, Inc.*, 205 Or. App. 257, 261, 134 P.3d 964 (2006) (citing *Reynolds v. Schrock,* 197 Or.App. 564, 578, 107 P.3d 52, *rev. allowed,* 339 Or. 475, 124 P.3d 1248 (2005)).

In *Mustola v. Toddy,* 253 Or. 658, 456 P.2d 1004 (1969), the Supreme Court adopted the *Restatement* approach for determining when a conversion has occurred.  The approach involves balancing a number of factors including:

   (a)  the extent and duration of the actor's exercise of dominion or control;

   (b)  the actor's intent to assert a right in fact inconsistent with the other's right of control;

   (c)  the actor's good faith;

   (d)  the extent and duration of the resulting interference with the other's right of control;

   (e)  the harm done to the chattel;

   (f)  the inconvenience and expense caused to the other.

*Mustola,* 253 Or at 663 (adopting *Restatement (Second) Torts* § 222A(2) (1965)).

Plaintiffs claim that the Defendants caused Ron Pfeifer's laboratory equipment and chemistry and materials to be taken and "failed to return them on a reasonable and timely basis[.]" Third Am. Comp. ¶ 55.  Plaintiffs are seeking damages of not less than $100,000.  *Id.*

The evidence does not support a conversion claim.  The evidence is that Plaintiffs hired NRC to evaluate, inventory, save and dispose of the chemistry as required.  Kuhn Decl. Ex. F, Depo Ex. 108, NRC Work Order.  There is no evidence that the Defendant Stumptown played any role in deciding which chemistry was stored and which was disposed of.  The evidence further shows that efforts were made to save all the chemistry that could be stored safely and that Ron Pfeifer had access to all of the chemistry taken from his lab and placed in off-site storage.  Kuhn Decl, Ex. B, RP Depo, 37:22 - 38:25; 81:13-21;  Ex. D, GP Depo, 123:20-25.  As Gene Pfeifer testified, "[Ron]

Page 37 -  DEFENDANT STUMPTOWN'S
          MEMORANDUM IN SUPPORT OF
          MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

was allowed to keep quite a few of the chemicals." Kuhn Decl, Ex. D, GP Depo, 127:11-12.  In

fact, according to Plaintiffs' testimony, NRC disposed of only two or three chemicals from Ron

Pfeifer's lab. *Id.* at 286:5-17.  Accordingly, weighing all six factors in the test for conversion, the

evidence overwhelmingly negates Plaintiffs' theory of conversion.  Summary judgment should be

entered in the Defendant Stumptown's favor.

> 6.  There is no genuine issue of material fact regarding plaintiffs' infliction of emotional
>     distress claim.
>
>     a.  *Plaintiffs' negligent infliction of emotional distress claim fails.*

The general rule is that emotional damages are not recoverable in the absence of some

physical injury.  *Morrow v. First Interstate Bank of Oregon, N.A.,* 118 Or. App. 164, 167, 847 P.2d

411 (1993), *see also*, *Curtis v. MRI Imaging Services II*, 148 Or. App. 607, 612, 941 P.2d 602

(1997), *aff'd on other grounds* 327 Or. 9, 956 P.2d 960 (1998) (addressing claim for negligent

infliction of emotional distress).  When a plaintiff seeks redress for emotional injury alone, liability

for negligence must have a legal source that goes beyond the common-law duty to exercise

reasonable care to prevent foreseeable harm.  *Shin v. Sunriver Preparatory School, Inc.*, 199

Or.App. 352, 365, 111 P.3d 762 (2005).

Plaintiffs must demonstrate some relationship with the Defendant Stumptown that gave rise

to some distinct legally protected interest beyond liability grounded in the general obligation to take

reasonable care not to cause them a risk of foreseeable harm.  *Stevens v. First Interstate Bank of*

*California,* 167 Or.App. 280, 286-87, 999 P.2d 551 (2000); *Lockett v. Hill*, 182 Or.App. 377, 380,

51 P.3d 5 (2002).  Even then, the legally protected interest so identified must be of sufficient

importance to warrant the award of damages for emotional distress.  *Shin*, 199 Or.App. at 365.

In this case, Plaintiffs do not allege a special relationship or legally protected interest that

could warrant emotional distress damages.  The fact that Plaintiffs are subject to government

regulation does not give rise to a special relationship.  *See, e.g. Loosli v. City of Salem,* 215 Or.App.

502, 511, 170 P.3d 1084 (2007) (no special relationship between plaintiffs and city that required city

to protect plaintiffs from risk of economic loss); *Skeen v. Department of Human Resources*, 171

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

Or. App. 557, 17 P.3d 526 (2000) (operators of foster care home could not state claim for

negligent infliction of emotional distress against DHS based on license revocation).  The failure

to adequately identify a special relationship precludes Plaintiffs from recovering any emotional

distress damages arising from negligent conduct.  *See, e.g. Rathgeber v. James Hemenway, Inc.*,

335 Or. 404, 418, 69 P.3d 710 (2003) (real estate professionals do not have the general duty to

guard against emotional harm); *Stevens, supra,* 167 Or. App. at 287-88 (bank's relationship with

depositors was not sufficient to allow depositors to recover for NIED). Any actions taken which

Plaintiffs' allege caused injury were government action not actions of Stumptown.  Therefore,

Defendant Stumptown is entitled to judgment as a matter of law on Plaintiffs' negligent infliction of

emotional distress claim.

> b.  *Plaintiffs' reckless infliction of emotional distress claim fails.*

There is no cognizable claim for reckless infliction of emotional distress under Oregon law.

*Snead v. Metropolitan Property and Casualty Ins. Co.*, 909 F. Supp. 775, 779 (D. Or. 1996)

*affirmed* 116 F.3d 486 (9th Cir. 1997).  In *McGanty v. Staudenraus*, 321 Or. 532, 542, 901 P.2d 841

(1995), the court held that a misreading of precedent had led to a line of cases which sanctioned a

reduced level of intent if a "special relationship" existed between the plaintiff and the defendant.

*Snead,* 909 F. Supp. at 778.  The *McGanty* court explained that in *Rockhill v. Pollard*, 259 Or. 54,

59-64, 485 P.2d 28 (1971):

> The court held that the relationship between the parties, as patient
> and doctor, should be considered "*in deciding what behavior may
> be found to be extreme or outrageous.*" [*Rockhill,* 259 Or. at
> 63](emphasis added).
>
> In *Rockhill,* the court drew a distinction between the necessary
> *intent* needed to sustain a claim for outrageous conduct and what
> type of conduct will be considered outrageous. The "special
> relationship" discussion applied only to the conduct element of the
> tort, not to the intent element.

*McGanty*, 321 Or. at 545 (emphasis in original).

In the absence of both physical injury and any special relationship with Defendants,

Plaintiffs are limited to a theory of recovery for their emotional damages based on alleged

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

intentional conduct. As set forth below, Plaintiffs cannot satisfy the elements of that claim. Therefore any claim based on the infliction of emotional distress is subject to summary judgment.

        c.  *Plaintiffs' intentional infliction of emotional distress claim fails.*

There are three elements to an intentional infliction of emotional distress ("IIED") claim: (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty*, 321 Or. at 543. In this case, Plaintiffs cannot prove their IIED claim because there is no evidence to support the requisite intent or socially intolerable conduct by Defendant Stumptown.

As the record demonstrates, the City/Fire Defendants' actions were carried out pursuant to the City's PMRs and Fire Department authority, in pursuit of the protection of public health, safety and welfare. The record is devoid of any evidence that any Defendant, let alone Stumptown, desired to inflict severe emotional distress upon Ron Pfeifer or knew that such distress was certain or substantially certain to result from their conduct.

Whether conduct amounts to an actionably outrageous transgression of social norms is determined by the court in the first instance when evaluating an IIED claim. *Clemente v. State*, 227 Or. App. 434, 442, 206 P.3d 249 (2009); *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008). The trial court is the gatekeeper in assessing allegedly tortious conduct in an IIED claim by making the determination of whether the conduct goes beyond the farthest reaches of socially tolerable behavior, thereby creating a jury question on liability. *House*, 218 Or. App. at 358. In *Hall v. The May Dept. Stores*, the court held that:

> [I]nsults, harsh or intimidating words, or rude behavior ordinarily do not result in liability for damages even when intended to cause distress. Contemporary standards of civility hardly allow turning every case of justified indignation into an action for financial recompense *** The tort requires some extraordinary transgression of the bounds of socially tolerable conduct.

*Hall v. The May Dept. Stores*, 292 Or. 131, 135, 637 P.2d 126 (1981).

Further, the court in *Hall* made clear,

Page 40 -    DEFENDANT STUMPTOWN'S
             MEMORANDUM IN SUPPORT OF
             MOTION FOR SUMMARY JUDGMENT

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

> "[D]efendant's act must in fact cause plaintiff mental or
> emotional distress of a severe and serious kind; the tort does not
> provide recovery for the kind of temporary annoyance or injured
> feelings that can result from friction and rudeness among people in
> day-to-day life even when the intentional conduct causing
> plaintiff's distress otherwise qualifies for liability." *Id.*

Again, the record in this case is that the City/Fire Defendants reasonably perceived a serious

threat posed by the chemistry and other materials found on the Stumptown Property, and they

legitimately acted pursuant to the City's PMRs and Fire Department authority to protect the public.

Stumptown as fee title owner of the property had to abide by those orders and the governmental

authority. There is no evidence of socially intolerable conduct in this case. Nor is there any

evidence that Ron Pfeifer suffered severe emotional distress as a result of the City/Fire Defendants'

actions or any actions of Stumptown. Accordingly, summary judgment should be entered in the

Defendant Stumptown's favor and against Plaintiffs' claim.

7. No genuine issue of material fact regarding plaintiffs' elder abuse claim.

Under O.R.S. 124.100(2), "[a] vulnerable person who suffers injury, damage or death by

reason of physical abuse or financial abuse may bring an action against any person who has caused

the physical or financial abuse or who has permitted another person to engage in physical or

financial abuse." The definition for "vulnerable person" includes "an elderly person," which is

someone who is 65 years of age or older. *See*, O.R.S. 124.100(1)(a) & (e)(A).

There is no allegation of physical abuse in this case. Under O.R.S. 124.110(1)(a), an action

may be brought under O.R.S. 124.100 for financial abuse when a person wrongfully takes or

appropriates money or property of a vulnerable person, without regard to whether the person taking

or appropriating the money or property has a fiduciary relationship with the vulnerable person.

A statutory claim for financial abuse of a vulnerable person has four elements: there must be

(1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated

person, and (4) the taking must be wrongful. *Church v. Woods*, 190 Or. App. 112, 117, 77 P.3d

1150 (2003). Conduct is "wrongful" under the statute, "if it is carried out in pursuit of an improper

motive or by an improper means." *Id.* at 118. The "improper means" must "be independently

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of." *Id.* citing *Conklin v. Karban Rock, Inc.,* 94 Or.App. 593, 601, 767 P.2d 444, *rev den,* 307 Or.719, 773 P.2d774 (1989). In other words, there must be evidence of conduct such as "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood" in order to prove that an alleged taking or appropriation "wrongfully" occurred by improper means. *Id.*

In this case there is no such evidence. Although Plaintiffs attempt to make allegations of improper motives and conduct on the part of the Defendants, there is no evidence to support their mere assertions. The evidence is that the City/Fire Defendants' utilized an authorized process set forth in the City's PMR's and Fire Department authority, Plaintiffs cooperated with that process, and an independent company was hired by Plaintiffs to carry out the remediation of Ron Pfeifer's chemistry and materials. There is no evidence that Stumptown took anything from Ron Pfeifer. Accordingly, the Defendant Stumptown is entitled to summary judgment in its favor on Plaintiffs' elder abuse claim.

8. No genuine issue of material fact regarding plaintiffs' interference with business relations.

To state a claim for intentional interference with economic relations, a plaintiff must allege each of the following elements: (1) the existence of a professional or business relationship, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages. *Allen v. Hall*, 328 Or. 276, 281, 974 P.2d 199 (1999); *Straube v. Larson,* 287 Or. 357, 360-61, 600 P.2d 371 (1979); *Wampler v. Palmerton,* 250 Or. 65, 73-76, 439 P.2d 601 (1968). This tort serves as a means of protecting contracting parties against interference in their contracts from outside parties. *McGanty*, 321 Or. at 536 (citing *Wampler,* 250 Or. at 73).

However, "[d]eliberate interference alone does not give rise to tort liability." *Northwest Natural Gas Co. v. Chase Gardens, Inc.* 328 Or. 487, 498, 982 P.2d 1117 (1999). Rather, the

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

interference must be wrongful "in some manner other than simply causing the damages claimed as a result of the conduct." *Douglas Med. Ctr., LLC v. Mercy Med. Ctr.*, 203 Or.App. 619, 634, 125 P.3d 1281 (2006); *see Top Service Body Shop v. Allstate Ins. Co.*, 283 Or.App. 201, 209, 582 P.2d 1365, 1371 (Or. 1978) (stating that the interference must be wrongful "by some measure beyond the fact of the interference itself"). It is Plaintiffs' burden in the first instance to come forward with evidence not only that Defendant Stumptown intentionally interfered with Plaintiffs' business relationships but that they interfered for an improper purpose rather than for a legitimate one. *Top Service*, 283 Or. at 210.

For the reasons explained in the preceding section, Plaintiffs' claim fails because there is no evidence that the Defendant Stumptown's conduct was "wrongful" in a way that is independent from the alleged interference.

Moreover, it is well established in Oregon that an interference may be privileged or legitimate such that the interferer avoids liability. *Wampler , supra*, 250 Or. at 73-78. When privilege is asserted, courts look to purpose or motive as a controlling factor. *Id.* Where interferer "is promoting an interest which is equal or superior in social value to that with which he interferes, his actions are said to be privileged or justified." *Id.* "Generally a defendant's subjective judgment as to its own business purposes will control. *Northwest Natural Gas Co. v Chase Gardens, Inc.*, 328 Or. 487, 498, 982 P.2d 1117 (1999) (citing *Top Service Body Shop, Inc.*, 283 Or.App. at 212).

The record in this case demonstrates that the City/Fire Defendants' acted pursuant to a legitimate government interest in the perceived threat of a serious public health and safety concern. Defendant Stumptown was required to abide by the legitimate government authority and orders. When Stumptown learned of the issues raised by the government authorities it gave Plaintiffs', through Gene Pfeifer, leeway to deal with the issues as it was Plaintiffs' chemicals and materials placed on the property by Plaintiffs over the years that brought on the governmental action. Stumptown ended up paying the fine and for the cost of rectifying the conditions when Plaintiffs failed to and had no funds due to liens placed on the property by the service providers. Plaintiffs

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile: (800) 972-3206

cannot come forward with sufficient evidence to satisfy the elements of their claim for relief.

According, summary judgment should be entered in the Defendant Stumptown's favor.

## V.  CONCLUSION

For the foregoing reasons, Defendant Stumptown is entitled to summary judgment as a

matter of law on all of plaintiffs' claims.

Respectfully submitted this _____ day of March, 2012.

Law offices of Andersen & Nyburg

By: _____

David A. Hytowitz, OSB No. 751929
Of Attorneys for Defendant Stumptown
Properties, LLC

Law offices of Andersen & Nyburg
650 NE Holladay, PO Box 4400
Portland, Oregon 97208-4400
Telephone: (503) 736-7964
Facsimile:  (800) 972-3206

1

## CERTIFICATE OF SERVICE

2

3

4

5

I hereby certify that I have served on the date set forth below, the foregoing **DEFENDANT STUMPTOWN LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** upon the following attorneys and individuals on **MARCH 27, 2012** by electronic mail and/or by electronic means through the Court's Case Management/Electronic Case File System:

| Sonia Montalbano attorneys@eoplaw.com | Ronald Downs rdowns@sdao.com |
|---|---|
| Richard Kuhn rjk@hhw.com, kaw@hhw.com | Chris Davis, Esq. cpd@chrisdavislaw.com |
| Ronald Pfeifer unclerongeol@yahoo.com | Gene Pfeifer Gene@innovdc.com |

6

7

8

9

10

11

12

and to the following individuals or entities, by mailing a true and correct copy thereof, to the address shown below, and deposited in the United States mail on said day with sufficient postage, in a sealed envelope, at the post office at Portland, Oregon.

13

14

Innovative Design and Construction, LLC
Trustee, Gene Pfeifer
Gene Pfeifer

15

16

All c/o Gene Pfeiffer
P.O. Box 396
Silverton, OR 97381

17

18

Ronald Pfeifer
P.O. Box 396
Silverton, Oregon 97381

19

20

21

22

23

Dated this ___27___ day of March, 2012.

_____
David A. Hytowitz, OSB No. 751929
Attorney for Defendant Stumptown
Properties, LLC.

24

25

26

27

PAGE 1 – CERTIFICATE OF SERVICE

Law Offices of Andersen & Nyburg
Employees of Liberty Mutual Group
PO Box 4400
Portland, OR 97208-4400
«LFS0_FILEUSPHONES»
FAX: (503) 736-7276