UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GENE PFEIFER; et al.,                                                    6:09-CV-6295-TC

Plaintiffs,

v.                                                               ORDER

CITY OF SILVERTON; et al.,

Defendants.

COFFIN, Magistrate Judge:

This action arises from the discovery and removal of potentially hazardous chemicals from property occupied by plaintiffs. Brothers Gene and Ron Pfeifer and their business and trust entities bring nine claims for relief against the City of Silverton, some of its individual employees, the Silverton Fire Department and some of its employees, landlord Stumptown Properties, LLC, and individual Anderson.

The potentially hazardous chemicals were discovered during a fire and building code inspection, prompting immediate response from City and State agencies. They were quickly removed from the

Page 1 - ORDER

site and plaintiffs were ultimately fined by Oregon's Department of Environmental Quality (DEQ).

Plaintiffs bring nine claims against defendants: common law negligence; common law trespass; abuse of process; wrongful civil proceedings; conversion; infliction of emotional distress; elder abuse; interference with business relations; and a due process claim under 42 U.S.C. §1983.

Presently before the court are motions for summary judgment from the Silverton defendants (#79, #82), defendant Stumptown (#94) and defendant Anderson (#91). For the reasons stated below, such motions are allowed and this action is dismissed.


## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for

trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. <u>Anderson</u>, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. <u>Id.</u>

### Factual Background

In 2000, plaintiffs received a copy of a report by an environmental consultant recommending alternative storage and removal of chemicals on the property. Despite the fact that the chemicals belonged to plaintiffs and had been on the property for decades, they did nothing to properly store of remove the chemicals. Plaintiffs admit that the chemistry remained in exactly the same locations as they were when government officials discovered them in September of 2007. Plaintiffs also admit that the property contained radioactive material, a barrel of cyanide, a tank of ethylene oxide, approximately 100 old tires and a 55 gallon drum of paint thinner.

On September 5, 2007, Silverton Fire Chief Vince Herman, Building Code Inspector Daryl Jones and State Fire Marshall Paul Nees came to the property to perform a fire and building code inspection. Ms. Dixie Guthrie, a part of the management team for plaintiffs' business, was working with a crew to remove debris and asbestos from the area. Noticing the crew's efforts, the officials spoke to Guthrie and she offered to show them more of the property. When Gene Pfeifer encountered officials for the first time on September 5, he did not ask any of them to leave nor did he say anything to suggest that they did not have his consent to be on the property. He admits that

he cooperated with the investigation and that if Ms. Githrie asked him if she could unlock a door for inspectors , he probably would have let them in.

State Fire Marshal Nees had noted that he was concerned about fire and that some of the electrical outlets violated code. He had earlier requested DEQ involvement and Susan Shewczyk of the DEQ arrived. A plan was made with Gene Pfeifer to secure the building and meet with government officials at the property the following morning. The DEQ official felt there were abandoned chemistries and paints on the properties and accused Pfeifer of it. There was no inspection of the chemistry area that day and Gene Pfeifer did not believe officials knew there was a lab on the property. Later that night, plaintiff Ron Pfeifer, a metallurgist and geologist, removed materials from the lab without informing any government official.

Gene Pfeifer met with State Fire Marshal Nees and Building Inspector Jones at the property the next morning. State Fire Marshal Nees presented Gene with a list of concerns and clean-up tasks. These concerns included electrical connections and concerns for fire and the chemicals present. Jones also had concerns about hazardous waste on the property and insisted that clean up of the chemistry begin immediately. There was a second meeting that day with Nees, Gene Pfeifer, Shewczyk of the DEQ, Ron Pfeifer, Jones , City Manager Bryan Cosgrove and another City Official. Gene said the point of the meeting was to discuss plaintiffs' efforts to secure an environmental contractor and discuss whether any of the lab materials could be saved. A third meeting took place for the purpose of inspecting the lab. The DEQ arranged for the inspection once they discovered the lab existed and Ron Pfeifer personally consented to it. The Pfeifer brothers, Shewczyk and State Fire Marshall Nees attended.

Plaintiffs hired an environmental company to evaluate the chemistry and segregate as needed and

Page 4 - ORDER

to advise as to the saving and disposing of chemicals if requested. The company made a nine page single space inventory of the chemicals found in the lab. All of the chemicals on the list were packaged and moved to an off-site storage that was accessible to plaintiffs. Ron Pfeifer did not lose any of the chemicals on the list. In fact, according to Gene Pfeifer, the company disposed of only two or three chemicals from Ron's lab at State Fire Marshal Nees' suggestion.

The City issued plaintiffs a Notice of Violation and Notice of Infraction on September 10, 2007 and, on October 1, 2007, the DEQ issued a Pre-Enforcement Notice informing plaintiffs that the DEQ had concluded that plaintiffs were responsible for eight different violations of state and federal hazardous waste laws.

## Discussion

As discussed in further detail below, plaintiffs fail to create a genuine issue for trial. Plaintiffs have failed to make a sufficient showing on essential elements of their claims.

Simply put, government officials were invited by plaintiffs' employee to look at areas where plaintiffs stored debris and chemistry. What officials found concerned them. The officials alerted the proper authorities who required plaintiffs to remedy the hazards they discovered and that, for the most part, had existed for many years. As a result, Ron Pfeifer's lab was moved but he maintained access to his chemistry and lost only two to three items.

Plaintiffs make a disjointed attempt to characterize the circumstances of this case as improper actionable conduct by vindictive City officials who were out to punish Gene Pfeiffer for his past opposition to the City's attitude and handling of a dam above the City. Plaintiffs' rendition of the

facts is not adequately supported by admissible evidence [1] and , in any event, fails to create a genuine issue for trial as to any of their claims for relief.

Plaintiffs have provided an email from City Manager Bryon Cosgrove dated September 10, 2007. It expresses concern about the chemicals and refers to contacting the State Health Department who could do a site visit to determine whether the lab presented a threat to public safety. Exh 7 to #106. As previously stated, plaintiffs do not dispute that the property they occupied contained potentially hazardous materials and was potentially dangerous. They admit that the property housed asbestos, radioactive material, cyanide and ethlene oxide. Plaintiffs agree that a health hazard could have been perceived. Even despite this admission, plaintiffs contend the perceived health hazard should not have been seen as an immediate threat.  Plaintiffs argue that the manner in which defendants handled the situation was unjustified, and that the chemistry, though potentially hazardous, was "viable"and not waste, and there was no risk or hazard since the chemicals had been "quietly" stored in the same manner for years. However, simply because the hazards discovered in September 2007 had "quietly" evaded serious health or safety incident does not negate the fact plaintiffs were in violation of City and State health, safety and environmental regulations.  Even if the chemicals were "viable" and part of a "quiet "operation, the manner of storage (which plaintiffs admit could have been better), the lack of a proper inventory, and the multitude of other offenses and risks cited, not just in the City's Notice of Violation, but also in the nondefendant State Fire Marshal's Notice and

---

[1]Many of defendants' evidentiary objections to plaintiffs' exhibits are well taken.  Even if the exhibits are considered, plaintiffs' claims still fail.  Plaintiffs have failed to make a sufficient showing on essential elements of their claims.  Plaintiffs also vaguely state in random places of their voluminous briefs that defendants prevented them from taking depositions.  Such is inconsequential as there is no further support for such allegations, the discovery deadline has passed , and plaintiff had not filed any discovery motion.

Order of Correction and the nondefendant DEQ's Pre-enforcement Notice And Warning Letter, justified the Silverton defendants enforcement actions in this case. Plaintiffs have not challenged the authority of DEQ or State Fire Marshal to be on the property and their initial impression and findings. Nor do they deny that there were violations found that they were required to fix and that led to fines.

Much of plaintiffs' opposition to the Silverton defendants enforcement action seems to be based on the belief that the City should have acted with more leniency and should have "stood down" once the storage buildings were secured rather than enforce the City's regulations. Plaintiffs argue that the City should have followed the "wise and prudent example" of other agencies involved because, from plaintiffs' perspective, after the initial investigation of the chemistry in the lab, other agencies gave approval for plaintiffs to continue the "quiet operation" of the lab for 14 days to allow for further investigation and use of the chemistry. As defendants have demonstrated, the evidence does not support this story, but, in any event, even a variance in the action taken by different agencies does not create a genuine issue of material fact for trial on plaintiffs claims, especially with plaintiffs aforementioned admissions.

Contrary to plaintiffs' feelings about the handling of the situation and the motives for it, the record demonstrates that the Silverton defendants acted pursuant to a legitimate government interest in the perceived immediate threat to public health and safety and exercised proper enforcement authority under the City's Municipal Code.[2]

---

[2]"Orders temporarily prohibiting access to crime scenes, businesses that violate health codes, fire-damaged buildings or other areas have long been considered permissible exercises of police power that do not require compensation." Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency, 535 U.S. 302, 334 (2002); see also , City of Erie v. Pap's A.M., 529 U.S. 277 (2000)( finding that a City's efforts to protect public health and safety are clearly within

Page 7 - ORDER

Due Process Claims

Plaintiffs claim that defendants violated their rights to due process.  It is unclear from the operative complaint whether plaintiffs' claims are founded on an alleged procedural or substantive due process violation.

Substantive Due Process Claim

It is well established in this Circuit that when a substantive due process challenge is made to a municipality's land use action, a plaintiff must show that the governmental action failed to advance any legitimate government purpose.  Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008).  Only "egregious official conduct" that "must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective" is actionable.  Id.

As discussed above, plaintiffs vague allegations cannot show an abuse of government power sufficient to constitute a constitutional violation in the particular circumstances of this action and the  claim fails.

Procedural Due Process Claim

Although due process generally requires some type of hearing before the deprivation of the protected property interest, there are recognized exceptions to the predeprivation hearing.  " The necessity of quick action by the State or the impracticality of providing any meaningful deprivation process, when coupled with the availability of some meaningful means by which to assess the

---

its police powers).    The Oregon Supreme Court has recognized that "the preservation of the health and physical safety of the people is a purpose of prime importance in the exercise of police power."  Baer v. City of Bend, 206 Or. 221, 224 -25 (1956).  Defendants demonstrate that the Silverton defendants' application and enforcement of municipal codes and regulations was not improper under the particular facts of this action, see, e.g., Silverton Municipal Code 15.08.390, 15.08.610, and 15.08.620.

Page 8 - ORDER

propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." Parrot v. Taylor, 451 U.S. 527, 539( 1981), rev'd on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).

Plaintiffs do not allege that the City's regulations are unconstitutional or that plaintiffs did not have the opportunity to invoke procedural protections afforded by the regulations.  The City's Notice identified specific violations found, informed plaintiff of the remedial action necessary to avoid further enforcement action, and informed plaintiff of the process that would be triggered if they chose to deny the alleged infraction.  Plaintiffs did not deny the infraction.  Instead, they cooperated with the remediation efforts.  Plaintiff never triggered the additional process afforded them.

Moreover, as City officials, the individual defendants are entitled to qualified immunity.  See, Saucier v. Katz, 533 U.S. 194 (2001).  There  is no evidence of a due process violation, and, in addition, there is no evidence to suggest that it would have been clear to a reasonable official that his or her conduct was unlawful in this situation.

In addition, the City cannot be liable as a matter of law because there is no evidence that a municipal policy or custom caused plaintiffs' alleged injury.  Monell v. Dept. of Social Serv. of N.Y., 436 U.S. 658 (1978).

Negligence Claim

Plaintiff alleges that defendants were negligent in taking or failing to make the following action: (1) "failing to take actions with due care,"  (2) "[failing to give] proper notice in regard for person and business property rights," and (3) ''failing to reasonably investigate matters and reasonably and fairly act on those matters." Paragraph 45 of Third Amended Complaint.

Plaintiffs' claim fails as a matter of law as they are unable to support their mere assertions with sufficient evidence to create a genuine issue of material fact. Plaintiffs have failed to make a sufficient showing on an essential elements of their claim, i.e., that there was a breach of a duty of care, and that there was causation for any damages.

The evidence in the record establishes that the City defendants acted pursuant to the City's regulations , within their discretion, and acted reasonably in light of the condition of the perceived hazard created by plaintiffs. The evidence further establishes that the City defendants were not the only government agency concerned about the condition of the property and the manner in which plaintiffs stored and maintained their chemistry.

Trespass Claim

Plaintiffs' trespass claim fails as plaintiffs have failed to make a sufficient showing on an essential element of their claim, i.e., that there was not adequate authorization or consent to the entry. See Hager v. Tire Recyclers, Inc. , 136 Or App. 439 (1995).


Abuse of Process Claim

There is no genuine issue of material fact with regard to plaintiffs' abuse of process claim. Plaintiffs have failed to make a sufficient showing on an essential element of their claim, i.e., that there was some ulterior purpose, unrelated to the process, and a willful act in the use of process that was not proper in the regular conduct of the proceeding. See Columbia County v. Sande, 175 Or. App. 400, 408 (2001).

In addition, rather than pursue a civil enforcement action, the City defendants chose to provide plaintiffs with a Notice of Violation/Infraction and an opportunity to remedy the infraction.

Page 10 - ORDER

Plaintiffs did not dispute the Notice of Violation/Infraction and, instead complied with the actions required by it, thereby never triggering a legal proceeding against them.

Wrongful Civil Proceedings Claim

Similarly, there is no genuine issue of material fact with regard to plaintiffs' wrongful civil proceedings claim. Plaintiffs have failed to make a sufficient showing on an essential element of their claim, i.e., that the proceedings terminated in plaintiffs' favor. See Manita v. Hanson, 190 Or. App. 412 (2003).

 Conversion Claim

Plaintiffs claim that defendants caused Ron Pfeifer's laboratory and equipment and chemistry and materials to be taken and "failed to return them on a reasonable and timely basis ." Paragraph 55 of Third Amended Compl. Plaintiffs are seeking damages of not less than $100,000. Id.

The evidence does not support a conversion claim. The evidence is that plaintiffs hired an environmental firm to evaluate, inventory, save and dispose of chemistry as required. The evidence further shows that efforts were made to save all the chemistry that could be stored safely and that Ron Pfeifer had access to all of that chemistry taken from his lab and placed in off-site storage. No rational jury could find in favor of plaintiff on his conversion claim. Seeu Mustola v. Today, 253 Or. 658 (1969).

Emotional Distress Claims

Plaintiffs three claims for emotional distress fail.

Plaintiffs have failed to make a sufficient showing on an essential element of their negligent infliction emotional distress claim, i.e., that there was some physical injury involved. See, Morrow v. First Interstate Bank of Oregon, 118 Or. App. 164 (1993).

Page 11 - ORDER

Plaintiffs' reckless infliction of emotional distress claim fails as there is no such claim under Oregon law.  McGanty v. Staudenarus, 321 Or. 532 (1995).

Plaintiffs' intentional infliction of emotional distress claim fails.  Plaintiffs have failed to make a sufficient showing on essential elements of their claim, i.e., that the defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct and that defendants were the cause of plaintiffs' alleged severe emotional distress.  See McGanty v. Staudenarus, 321 Or. 532 (1995).

Elder Abuse Claim

Plaintiffs claim for elder abuse fails. Plaintiffs have failed to make a sufficient showing on an essential element of their claim, i.e., that the means of defendants' action were "independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of." Church v. Woods, 190 Or. App. 112 (2003).    There is no evidence of conduct such as " violence, threats, intimidation, deceit, misrepresentations, bribery, unfounded litigation , defamation and disparaging falsehood." Id. The evidence is that the City defendants utilized an authorized process set forth in the regulations, plaintiffs cooperated with that process, and an independent company was hired to carry out the remediation of the chemistry and materials.  The DEQ and State Fire Marshall also acted on the perceived hazardous situation.

Interference with Business Relations Claim

There is no genuine issue of material fact with regard to plaintiffs' interference with business relations claim.   Plaintiffs have failed to make a sufficient showing on an essential element of their claim.  Similar to the analysis for the claim discussed above, plaintiffs  have failed to adequately show that defendants' conduct was wrongful in a way that is independent from the alleged

interference.  See Top Service Body Shop v. Allste Ins. Co., 283 Or. App. 201 (1978).

Defendants Stumptown and Anderson

The motions for summary judgment from defendants Stumptown and Anderson are well taken.

Plaintiffs have failed to create a genuine issue for trial as to defendants Stumptown and Anderson.

Plaintiffs have failed to make a sufficient showing on essential elements of their claims.  In addition

to the discussion above, landlord Stumptown was required to follow the orders of the government

agencies and its conduct was reasonable in light of the commercial landlord - tenant relationship.

Stumptown was not the cause of any alleged harm to plaintiffs and actually ended up having to pay

the government fines as plaintiffs could not.


### Conclusion

Plaintiffs' motion (#117) to file for extension of time to file a reply to defendants' evidentiary

objections is allowed.  Defendants'  motions (#121, 122, 123, 124) to strike plaintiffs' reply to

defendants' motions for summary judgment are denied.

The motions for summary judgment  from the Silverton defendants (#79, #82), defendant

Stumptown (#94) and defendant Anderson (#91) are allowed and this action is dismissed.


DATED this __19__ day of September, 2012 .


_____
THOMAS M. COFFIN
United States Magistrate Judge


Page 13 - ORDER